GEO. J. ANDERSON *et al.*, Appellees, v. ORIENT FIRE INSURANCE COMPANY *et al.*, Appellants.

1. **Venue:** CHANGE TO COUNTY OF RESIDENCE: ACTION TO ENJOIN PAYMENT OF COUNTY BONDS. In an action by the taxpayers of a county to restrain the county treasurer from paying, and the auditor and supervisors from levying a tax to pay, certain county bonds alleged to be invalid, a temporary injunction was granted upon notice to all of the defendants, but the original notice was served upon the treasurer alone, and, as against him, the injuction was made perpetual at the next term of court, and the cause was then continued from term to term for about a year and a half. At the end of this time the plaintiffs, upon leave granted, made the owners of the bonds, none of whom were resident in the county, parties defendant, and, in an amendment, averred that the bonds were void for the reasons stated in the original petition. At the same time they brought in the auditor and supervisors by serving an original notice upon them. One of the bond owners, a resident of another county, then appeared, and moved that the place of trial be changed to the county of his residence, on the ground that the action, as first begun, terminated with the decree against the treasurer, and that, therefore, there was no defendant, as the cause then stood, who resided in the county where the action was pending. *Held*, that the auditor and supervisors, residents of the county, were proper parties defendant to the action; that the action was kept alive by continuance as to them; that the amendment was not a new action, but only a further prosecution of the original one; and that the motion for a change of venue was properly denied.

2. **Parties to Action:** INJUNCTION AGAINST PAYMENT OF COUNTY BONDS. To an action by the taxpayers of a county against the holders of county bonds alleged to be invalid, to have them declared void and canceled, and to enjoin the officers of the county from paying or levying a tax to pay them, where there is no attempt to divest the county of a right or impose upon it an obligation, the county is not an indispensable party.

3. **Equity:** JURISDICTION: INJUNCTION: INVALID COUNTY BONDS. Where county officers are about to levy a tax to pay bonds which are invalid, the taxpayers have no adequate remedy at law, and a court of equity has jurisdiction to enjoin the levy of the tax and the payment of the bonds, and, in the same action, to decree the bonds to be void, the holders thereof having been made defendants.

4. **Removal of Causes:** GROUNDS FOR. Where an action was brought by taxpayers against the county officers to enjoin them from paying invalid county bonds, and against the owners of the bonds for their cancellation, there was no ground for the removal of the cause to the federal court upon motion of one of the bondholders who was a nonresident of the state.

5. **Municipal Bonds:** IN EXCESS OF CONSTITUTIONAL LIMIT: LIMITATION CONSTRUED. Bonds issued by a county to pay an indebtedness already incurred in excess of the constitutional limit are void in the hands of the purchasers, and may be so declared by a court of equity, even though a part of the indebtedness was lawfully incurred; it being impossible, at least in the absence of any showing, to say that the proceeds of any particular bond of the series were applied in payment of a debt lawfully incurred.

*Appeal from Lyon District Court.*—HON. G. W. WAKEFIELD, Judge.

FRIDAY, MAY 26, 1893.

ACTION to enjoin the payment, and for the cancellation, of certain county bonds. Decree for the plaintiffs, and the defendants appeal.—*Affirmed.*

*Charles J. Cole* and *Henderson, Hurd, Daniels & Kiesel,* for appellants.

*H. G. McMillan* and *Kauffman & Guernsey,* for appellees.

GRANGER, J.—The plaintiffs, five in number, being citizens and taxpayers of Lyon county, Iowa, "each for himself and for the benefit and use of all the taxpayers" of said county, brought suit in May, 1887, against George W. Bowers, as treasurer, T. C. Thompson, as auditor, and others, as members of the board of supervisors, of said county, representing that: "All

the residents and taxpayers of said Lyon County, being more than a thousand persons, have a common and general interest in this suit, and are suffering damages by acts herein complained of, and sought to be enjoined, and said parties are so many and numerous that it is impracticable to bring them all before this court. Wherefore, these plaintiffs bring this action for all the residents and taxpayers of said Lyon county, and in the interest of the public and good government." And further that: "Under the laws of Iowa the said county of Lyon has no power or authority to contract any other or greater indebtedness than five per centum of the assessed valuation of all the property, real and personal, as the same appears upon the state and county tax lists for the year previous to that in which said indebtedness is created." And that: "The county of Lyon has created an indebtedness far in excess of the said five per centum, and far in excess of the legal indebtedness which it could in any manner incur, which said indebtedness is evidenced by negotiable bonds." And that: "When each and every one and all of said bonds were issued, and when the indebtedness upon which they were issued was created, the said county of Lyon was indebted to an amount far in excess of the constitutional limit of five per centum of the assessed value of all real and personal property therein." It was further averred that, unless restrained, the board of supervisors would levy a tax for the payment of said bonds, and that the treasurer would pay them; and a temporary injunction was asked, restraining such officers from so doing, with a prayer that upon final hearing it be made perpetual.

Upon notice to the county auditor and the members of the board of supervisors, and upon their failure to appear, a temporary writ was ordered on the eighth of September, 1887. No service of the original notice was made, except upon George W. Bowers, as treas-

urer. At the October term, 1887, of the court, the
cause came on for hearing, and upon the default of
Bowers a decree in accord with the prayer of the peti-
tion was entered as to him and his successors in office.
The cause was then continued, apparently, from term
to term, to June 10, 1889, when the plaintiffs presented
a motion to make certain parties defendants, and,
upon leave granted, the plaintiffs filed an amendment
to the petition, reciting that the bonds described in the
original petition were owned by certain parties named,
thirteen in number, being those named in the motion.
It is averred in the amendment to the petition that the
bonds owned by the parties are void for the reasons
stated in the original petition. After other averments,
not necessary to be recited here, is a prayer that "the
defendants be ordered to bring their bonds into court,
and that the same be canceled and declared void," and
for other relief.

The service of the notice under the petition, as
amended, was, as to most of the parties, they being
nonresidents, by publication. George B. Provost is
a resident of this state, at Dubuque, and was served
personally. The Orient Fire Insurance Company and
George B. Provost appeared, joined in the issues after-
wards tried, and are appellants in this court. The
county auditor and members of the board of super-
visors, after the amendment to the petition was filed,
were brought in as parties, and joined in the issues.
On the fifth day of March, 1890, a decree was entered
against all parties then served, except the Dubuque
National Bank, the Orient Fire Insurance Company,
and George B. Provost. In October, 1890, the cause
came on for trial upon the issues joined between the
plaintiffs and appellants. In March, 1891, the district
court entered its decree, granting to plaintiffs relief as
prayed. Other important facts can be better stated in
connection with the different propositions to be consid-
ered.

. I.   In October, 1889, the defendant Provost filed objections to the amendment of the petition, and moved that the place of trial be changed to Dubuque county, that of his residence, which the court refused.   With certain exceptions, actions must be brought in the county wherein some of the defendants actually reside. Code, section 2586.   If suit be brought in a wrong county it is the right of the defendant, on application to the court, to have the venue changed to the proper county.   Code, section 2589.   The theory upon which Provost was made defendant in a suit in Lyon county is that other defendants were residents of the county, bringing the case within the provisions of section 2586, cited.   It is in this connection that the particular facts as to the judgment entered in October, 1887, are important.   At the entry of that judgment but one party defendant, the treasurer, had been served with the original notice.   The auditor of the county and the members of the board of supervisors had been served with notice of the application for the temporary writ before the judge in vacation, but made no appearance. The cause had then been continued from October, 1887, to June 10, 1889; and it is said by the appellants that, at the entry of the judgment, in October, 1887, against the treasurer, the suit, as to him, was concluded, was at an end, and as no other defendants in the county had been served with the original notice when the amendment was filed, in June, 1889, it was, in effect, a new action, without parties to justify a suit against Provost in Lyon county.

1. VENUE: change to county of residence: action to enjoin payment of county bonds.

We think, to a proper determination of this question, we should look to the purposes of the suit at its commencement, and the course of procedure to the time of filing the amendment to the petition.   That the purpose of the suit, originally, was to free the taxpayers from a liability to pay the bonds, is not to be doubted;

and that more than a judgment against the treasurer
was then contemplated is clear, because the auditor and
members of the board were named as parties in the
record, though for some reason they were not brought
into the case. As to the entry of the judgment in 1887,
it is manifest that it was not regarded as final, because
of the continuance of the cause, which we must assume
was for the purpose of further proceedings therein; and
we think the right of the plaintiffs to bring in the mem-
bers of the board of supervisors for further judgment
in the case could not well be questioned, which was in
fact done. A fact to have in view at every stage of the
inquiry is the claim that the bonds were void, the deter-
mination of which fact lay at the foundation of any
judgment to be entered. The judgment against the
treasurer, he not being a real party in interest, but sim-
ply enjoined in his official capacity, was dependent upon
such a state of adjudications as to the parties in interest
(the bond owners) as would conclusively establish their
validity or invalidity. It is hardly to be claimed that
the decree against the treasurer would prevail against
an adjudication in which the bond owners, as against
the county, had established their validity. As showing
the incidental relationship of that judgment to one in
which the bond owners were parties, let us suppose
them to be present under the amended petition, and
that the final judgment would declare the bonds valid,
and dismiss the petition as without merit. What would
be the effect upon the judgment, as against the treas-
urer? It would certainly avoid it, for the reason that
it would be the final judgment in the same proceeding
between the parties in interest, and determinative of
the entire issues in the case. To our minds the pro-
ceeding under the amended petition, with the new
parties, is but a continued or further prosecution of the
original suit.

It is said that the amendment is distinct from the

original petition.   We do not think so.   As we have said, the invalidity of the bonds is the gist of the prosecution.   It is as conclusively so of the amendment as of the original petition.   The whole scope of the amendment is to bring in new parties to be bound by the final judgment.   It is not a case of two actions joined, but of one cause of action, in which there is a joinder of parties in interest.   The authorities as to a misjoinder of causes of action are not in point.

To the amendment there is a prayer that the bonds be declared void and canceled, and it is urged that it constitutes a separate action from the original to which the county should be a party.   The same facts must be established to secure the judgment sought under the original petition, namely, a restraint of collection, as to justify a cancellation; that is, that the bonds were invalid.   The prayer for cancellation is induced by the presence of the parties in interest, and is for the same purpose that the restraint of payment was sought.   It follows that if citizens, as taxpayers, can conclude the parties in interest by perpetually enjoining the collection of the bonds because not valid, they might have a judgment for cancellation, which is, in effect, the same.

It is said that in the original notice served on Provost there is "no intimation of any action such as that of the original petition.   No more does it refer to the amendment.   The original petition was there, as amended, and the original, with the amendment, constituted the petition, and the notice is that "there is now a petition filed by said plaintiff," etc.   It may further be said that at the same term with Provost, the auditor and members of the board of supervisors were made parties, and a decree entered against them.   It is true that service may have been made upon them after service on Provost, but the order of service could make no difference.

II.   It is urged that the county is an indispensable party to the action.   The right of a taxpayer to main-

tain such an action is well established.

**2. PARTIES to action: injunction against payment of county bonds.** *Hospers v. Wyatt*, 63 Iowa, 264; *Cornell College v. Iowa County*, 32 Iowa, 520; *Collins v. Davis*, 57 Iowa, 256; *Snyder v. Foster*, 77 Iowa, 640; *Goetzman v. Whitaker*, 81 Iowa. 527. It is to be borne in mind that there is no attempt to in any way divest the county of a right, or impose upon it an obligation. In *Moore v. Held*, 73 Iowa, 538, the town was held to be a necessary party, because it could not be divested of property by a proceeding to which it was not a party. It cites *Turner v. Cruzen*, 70 Iowa, 202, in which case the county was held to be a necessary party for the same reasons. This case is clearly in line with the cases in which taxpayers have been permitted to maintain suits for their protection against illegal burdens by taxation. The judgment sought involves no such interests or consequences as to make the county an indispensable party.

III. It is said that, even with the county a party, this case must be reversed, under fundamental princi-

**3. EQUITY: jurisdiction: injunction: invalid county bonds.** ples of equity jurisprudence; that no action lies, in equity, to rescind or cancel, where there is an adequate remedy by a defense to a suit on the instrument. Among other cases cited to support the claim is that of *Grand Chute v. Winegar*, 15 Wall. 373. It is a good case by which to illustrate the distinction of this case from those cited. The facts in that case are:

"The town of Grand Chute, in Wisconsin, filed its bill on the equity side of the court below against one Winegar; three other persons, Goodwin, Hewett, and Conkey, being also made defendants. It set forth that Winegar had brought suit on the law side of the same court against the town to recover from it the amount of certain bonds, nine in number and for the sum of eight thousand, five hundred dollars in all, purporting to have been issued by the said town; that the

bonds were issued without authority, in violation of law, and in fraud of the town, by the other defendants, Goodwin, Hewett, and Conkey; that for reasons set forth in the bill the bonds had no legal force or validity, that the transfer of them to Winegar was colorable merely; that he paid no valuable consideration on the pretended purchase; that he had given his note for them, he was a bankrupt, and altogether 'irresponsible in a financial point of view;' that he knew all the facts in relation to the issue; and that he never had any right or title to the said pretended bonds, or to any of them. It was further alleged that Winegar was a citizen of the state of New York, and that the other defendants were citizens of Wisconsin. The bill prayed that an injunction might be issued, restraining Winegar and his confederates from the further prosecution of the suit on the bonds, and that the bonds themselves might be adjudged to be fraudulent and void, and be decreed to be canceled. To this bill the defendant demurred. The demurrer was sustained in the court below, and the complainant now appeals to this court."

If this suit, like that, was to enjoin a suit at law for judgment on the bonds, the authority would apply with force, for then we would have a case in which the authorities of the county would, presumably, at least, be resisting payment in the interest of the taxpayers, and their rights would be protected in a defense to the suit sought to be enjoined. But how different in this case! Here there is no suit pending on the bonds, and the proper officers of the county are about to levy taxes for the payment of the bonds, or the interest, and apply the money thereto, and the taxpayer has no remedy at law. Without this suit the bond owners have but to present their bonds when mature, and they will be paid, and there is no action on the instruments in which defense can be made, either present or prospective. And, further, in the opinion, in that case, refer-

ring to the bill in equity, it is said: "No particular cir-
cumstances are stated showing the necessity for the
court interfering, either for preventing suits or other
vexation, or for preventing an injustice irremediable at
law." In this case the showing in these particulars is
abundant, The appellant cites, in the same connection
*Smith v. Short*, 11 Iowa, 523, which was also an attempt
to enjoin an action at law.

IV. The Orient Fire Insurance Company appeared,
and filed its application for a removal of the cause to

4. REMOVAL of
causes:
grounds for.

the federal court, which was granted, and
appellees there moved to remand the
cause, which motion was sustained, and
the opinion of the court (by Justice Shiras), upon the
motion is reported in 40 Fed. Rep. 708, and the rea-
soning seems to us so conclusive of the question that
we merely adopt the conclusions of that court.

V. The constitutional provision on which plaintiffs
seek exemption from liability on the bonds in question

5. MUNICIPAL
bonds: in ex-
cess of consti-
tutional limit:
limitation
construed.

is article 11, section 3: "No county or
other political or municipal corporation
shall be allowed to become indebted in
any manner, or for any purpose, to an
amount, in the aggregate, exceeding five per centum on
the value of the taxable property within such county
or corporation, to be ascertained by the last state and
county tax lists previous to the incurring of such
indebtedness." Lyon county was organized in 1872.
Five per centum of the assessed valuation of taxable
property in the county from that time to 1884 was
somewhat fluctuating; the lesser amount being for
1872, twenty-four thousand, nine hundred and fifty-
four dollars and ninety-nine cents, and the greater for
1884, seventy-one thousand, eight hundred and seventy-
six dollars and thirty-five cents. At various times from
1873 to May, 1885, the county issued bonds, under
different legislative acts, for the purpose of funding

and refunding its indebtedness upon judgments and outstanding warrants. There was no time between these dates that the bonds of the county, outstanding, did not exceed the constitutional limit of indebtedness.

. On the first day of May, 1885, the county issued a series of one hundred and twenty bonds, of one thousand dollars each, and they were placed in the hands of one Richards, as refunding agent for the county, who negotiated the same, and applied the proceeds to the payment of other outstanding bonds, except a small amount used for commissions and expenses. It is this series of one hundred and twenty bonds that is the subject of this suit. Just the amount of the indebtedness of the county on the first day of May, 1885, when the one hundred and twenty thousand dollars of bonds were issued, does not definitely appear, nor is it material as to the precise amount. It is a fact that it was quite largely in excess of the one hundred and twenty thousand dollars of bonds that were issued, and it is also a fact that the constitutional limitation at that time was seventy-one thousand, eight hundred and seventy-six dollars and thirty-five cents.

Another important fact to be stated, in view of the argument, is this: That of the previous issue of bonds, paid off with the proceeds of the one hundred and twenty thousand dollars of bonds in question, were some issued in discharge of judgments existing against the county, and probably bonds issued upon warrants or other evidences of debt within the constitutional limitation; so that it may be said, for the purposes of our present consideration, that the bonds in question represent indebtedness both within and without the constitutional limit. A ground of earnest contention by appellants against the judgment of the district court is that, notwithstanding the validity of a part of the indebtedness for which the bonds issued, yet the decree embraces, and declares void, the entire series.

The case of *Ætna Insurance Company v. Lyon County*, 44 Fed. Rep. 329, tried in the United States circuit court for the northern district of this state, was a law action upon interest coupons of this same series of bonds, and the opinion of the court is a subject of comment and difference between counsel. In that opinion it is said: "As the case now stands I hold that the facts show that the series of bonds issued by the county and negotiated by B. L. Richards, as agent for the county, represent in part bonds previously issued, and which were enforceable against the county, and in part bonds which were invalid and nonenforceable, but that in the present case, at law, and in the absence of interested parties, it is impossible to determine what part or proportion of the coupons sued on belong to bonds that represent the valid indebtedness refunded therein. While the plaintiff has shown a right of recovery against the county for some amount, it has failed to show a legal right to recover on all the coupons sued on, or any particular number thereof, and hence there is no basis for rendering a judgment at law in the present cause."

Counsel do not seem to differ as to the correctness of the rule stated, as applicable to that kind of a proceeding, but their difference is as to the applicability of the same rule to this proceeding, being in equity. Accepting the correctness of the rule as applied, some additional authorities may aid in its application to this case. However, to a full understanding of the opinion in that case, it may be well, in addition to the above quotation, which is that of appellants, to add the following, as a part of the same paragraph: "It seems to me that the only means of solving the difficulties of the situation is for the plaintiff and the other nonresident bondholders to unite in a proper proceeding against the county and such other bondholders as may refuse to act as complainants; and in such a suit it can

be finally determined for what amount the county can be held liable, and the rights of the respective bond-holders in and to this sum can be decreed.''

Since that case was determined, the case of *Doon Township v. Cummins*, 12 Sup. Ct. Rep. 220, has been decided in the supreme court of the United States, and it will be hereafter referred to. The relationship of that case to this, as to the subject-matter, is such that, if the two courts are in harmony as to the legal rules for application, the final solution of a problem of great importance to parties in interest will be materially aided.

Some facts and well-settled rules of law lie at the threshold of this inquiry. It is to be remembered that it is the taxpayer, and not the county, that brings the suit, and also that defendants to the suit are the officers of the county, who are its legal representatives and business agents, and upon whose care and conduct the taxpayer has a right to rely for protection against illegal taxation. These bonds were wrongfully placed upon the market by these officers against whom they now seek relief. It is a rule of law that purchasers of such bonds are bound to take notice of the constitutional limitation of municipal indebtedness, and of such facts as constitute a basis for their issuance, with certain defined exceptions, as to the facts recited in the bonds. In *Buchanan v. Litchfield*, 102 U. S. 278, it is said: "The purchaser of the bonds was certainly bound to take notice, not only of the constitutional limitation upon municipal indebtedness, but of such facts as the authorized official assessments disclosed concerning the valuation of taxable property within the city." The rule is quoted and approved in *Dixon County v. Field*, 111 U. S. 83, 4 Sup. Ct. Rep. 315. In *Lake County v. Graham*, 130 U. S. 674, 9 Sup. Ct. Rep. 654, the rule is stated as follows: "Nothing is better settled than this rule, that the purchaser of bonds, such as

these (being county bonds in excess of a constitutional limitation in Colorado) is held to know the constitutional provisions and the statutory restrictions bearing on the question of the authority to issue them." The same rule, in substance, is announced by this court in *First Nat. Bank v. District Township of Doon*, reported in 53 N. W. Rep. 301, and see authorities there cited. With such a rule of law to govern, we have the fact that the purchasers of the bonds, through Richards, took them with knowledge that they were illegally issued.

*Litchfield v. Ballou*, 114 U. S. 190, 5 Sup. Ct. Rep. 820, was a suit in equity to establish a lien for the purchase price of such bonds, because of the adjudged illegality of the bonds, on certain waterworks of the city, to the construction of which the money had been applied. Mr. Justice MILLER, in the opinion, used these words: "The holders of the bonds, and agents of the city, are *participes criminis* in the act of violating that prohibition, and equity will no more raise a resulting trust in favor of the bondholders than the law will raise an implied *assumpsit* against a public policy so strongly declared." The "declared" public policy refers to the constitutional provision limiting the indebtedness of the city, and while that is a case from Illinois, the constitutional language is the same as ours—that a county "shall not be allowed to become *indebted, in any manner or for any purpose*, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of its taxable property." The following, from the opinion, indicates the scope of this prohibitive language:

"It shall not *become indebted*. Shall not incur any pecuniary liabilty. It shall not do this in *any manner;* neither by bonds nor notes, nor by expressed or implied promises. Nor shall it be done for any *purpose*. There stands the existing indebtedness to a given amount, in relation to the sources of payment, as an impassable

obstacle to the creation of any further debt, in any manner or for any purpose whatever. If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law."

The italicised language is the same in the opinion. The case being in equity, and dealing with the equitable rights of such holders of bonds, because of the advantages of the corporation from the use of the money paid for the bonds, we may profitably give the case further notice. It denied to the plaintiff a recovery in any form, and directed the lower court to dismiss the bill. In the most unmistakable terms, it holds that no debt was created because of the purchase of the bonds, either expressed or implied; that if the plaintiff had a right against the city it was for some specific property, as the particular money expended, or the property representing it, "as property which they have purchased." The court below granted the lien on the waterworks, and the opinion speaks of it as "having decreed an indebtedness where none can exist." It is further said: "The money received on the bonds having been expended, with other funds raised by taxation, in erecting the waterworks of the city, to impose the amount thereof as a lien upon these public works would be equally a violation of the constitutional prohibition, as to raise against the city an implied *assumpsit* for money had and received." That case is a very significant and conclusive one upon the equitable claim that the county should be held to respond to the extent of its having received, appropriated, and profited by the money paid for the bonds, and we doubt if such a holding would have obtained except for the controlling principle that the bond purchasers, in parting with their money, were parties to a legal fraud upon the taxpayers. *Doon Township v. Cummins*, 142 U. S. 366; 12 Sup. Ct. Rep. 220, is a law action to recover upon interest coupons,

Vol. 88—38

and the case involves the application of this same constitutional provision, and the facts are closely allied to the point we are considering. The district township had issued refunding bonds in excess of the legal limit. The bonds were sold to Cummins, and the proceeds thereof were placed in the treasury of the district township, and six thousand dollars thereof were applied to the payment of outstanding bonds and coupons, the remaining part of the proceeds of the bonds being applied to other purposes. The circuit court gave judgment for six thousand, four hundred and sixty-two dollars and forty cents, being the amount of the coupons sued on, with interest. The case was free from any confusion as to conflicting interests of different bondholders, and the circuit court evidently applied the rule of allowing a recovery where the money for the bonds had been applied to the payment of debts within the constitutional limit. The case, on appeal, was reversed, with instructions to enter judgment for the township.

The opinion in that case contains some reasoning as to the application of the proceeds of the sale of the bonds, and the consequence to result from a failure of the officers to do their duty in that respect, which we do not find it necessary to approve or disapprove, because in this case the situation is such that there is no pretense of knowing, or being able from the record to know, that any part of the proceeds of the bonds in question, that is, those affected by the judgment in this case, were applied, or intended to be applied, to any legal indebtedness of the county; and the burden of such a showing, even if available, which we do not decide, would be with the holder of such bonds. Under the facts as they appear in this case the bonds are to be treated as void. We are not to be understood as in any manner changing the rule as to the right of a municipal corporation, where its indebtedness is up to, or

·exceeds, the constitutional limit, to make improvements or otherwise expend its moneys in a way that the legal effect of its action is not to create an indebtedness in excess of the constitutional limit, as is indicated in *Dively v. City of Cedar Falls*, 27 Iowa, 227, nor to change the rule as to contracts within the rule as to current revenues, as held in *Grant v. City of Davenport*, 36 Iowa, 396.

The appellants cite many authorities upon familiar rules as to "laches" and "clean hands" for those asking equity, but they are entirely inapplicable, and have never, to our knowledge, been applied to a similar state of facts.

Our conclusion is that the decree of the district court is fully warranted under the law, and it is AFFIRMED.