R. HOLLIDAY, *et al.*, v. HENRY HILDERBRANDT AND E.
E. CARPENTER, *et al.*, Appellants.

**Bonds:** CONSTITUTIONAL LAW.  Where all that appears is that bonds were issued to take up others issued in violation of the debt limit prescribed by the constitution, and there is no proof that their proceeds were used to pay off the first bonds, the last bonds will be held to increase the municipal indebtedness, and to be illegal and void.

**Bond Purchasers:** MUNICIPAL CORPORATION: *Notice.* Purchasers of school district bonds are bound to take notice, at their peril, of the limitation prescribed by the Iowa constitution, article 11, section 3, prohibiting such districts from becoming indebted in excess of five per cent of their taxable property, as disclosed by the authorized tax lists.

**Burden of Proof.** In an action to enjoin the sale and cancel a series of school district bonds, on the ground that they were issued in violation of constitutional provisions limiting municipal debt to five per cent. of the assessed valuation, the burden of showing that some of the bonds were applied in payment of a legal debt, is upon the bond-holder.

**Practice:** PARTIES.  A school district is not an indispensable party to an action by citizens and tax-payers of the district against the officers of such district, the county board of supervisors, auditor, and county treasurer, to enjoin the payment of, and cancel certain bonds of the district, on the ground that they are void.  *Turner v. Cruzen,* 70 Iowa, 202 (30 N. W. Rep.); and *Moore v Held,* 73 Iowa, 538 (35 N. W. Rep. 623); distinguished.

*Appeal from Lyon District Court.*— HON. GEORGE W. WAKEFIELD, Judge.

MONDAY, FEBRUARY 3. 1896.

ACTION in equity to enjoin the payment and for the cancellation of certain school-district bonds. Decree for plaintiffs, and the defendants appeal.- *Affirmed.*

*A. R. Brown* for appellants.

*McMillan & Dunlap* for appellees.

KINNE, J.—I.   This action is brought in the names of five citizens and taxpayers of the independent districts of Allison and of Jackson, in Lyon county, Iowa, for themselves, "and for the benefit and use of all taxpayers" of said districts.   The defendants are the officers of said districts, the board of supervisors of said county, the county auditor, the county treasurer, and certain other persons, who are the holders and owners of the bonds, the payment of which is sought to be enjoined.   The case was submitted to the district court upon an agreed statement of facts, from which, and from the pleadings, it appears that prior to 1885, the territory now constituting the independent districts of Allison and of Jackson, was known as, and in fact constituted, the "Independent District of Riverside," which said district was organized in 1872; that the assessed valuation of all property within the independent district of Riverside, as shown by the state and county tax lists for the several years, was as follows:

| | |
|---|---:|
| For the year 1872 | $41,426 00 |
| For the year 1873 | 68,307 00 |
| For the year 1874 | 56,187 00 |
| For the year 1875 | 69,873 64 |
| For the year 1876 | 70,127 76 |
| For the year 1877 | 56,312 00 |
| For the year 1878 | 60,064 00 |
| For the year 1879 | 47,220 00 |
| For the year 1880 | 44,571 00 |
| For the year 1881 | 44,033 00 |

From July, 1877, up to March 12, 1882, said independent district of Riverside, had issued its negotiable bonds to the amount in excess of one hundred and

sixty thousand dollars. . It is conceded that, prior to the issuance of any of the bonds above referred to, said district had an outstanding indebtedness of fifty thousand dollars; that none of the bonds involved in this action were issued for the purpose of paying judgments or judgment indebtedness, but all of them were refunding bonds, issued for the purpose of taking up prior outstanding bonds, issued ostensibly for the purpose of building schoolhouses; that said district never received any actual consideration for the bonds, but the same were fraudulently issued to take up the old bonds, and no part of the proceeds was used to make public improvements in said district; that at and prior to the issuance of said bonds, the affairs of said district were managed with the most reckless extravagance and fraud on part of its directors, who issued bonds and appropriated the proceeds to their own use.  It is also conceded that the present holders of the bonds bought them in open market, before due, and paid a consideration therefor, and had no notice of any illegality in their issuance, except such knowledge as was disclosed by the records of said district and county, and by the constitution and laws of the state.  The district court found that all of the bonds in the suit were issued through fraud, and without consideration; that they were past due; that the holders took them with knowledge that they were issued in violation of the constitution and laws of the state,—and decreed all of them to be void, and canceled them, and enjoined the owners of them from selling, assigning or transfering said bonds, or coupons, or from proceeding in any manner to collect the same, and enjoined the officers of said districts, and of the county, and their successors, from certifying, levying or collecting any taxes to pay any part of the principal or interest of said bonds, and affording other relief.

II.   It is insisted by the appellants that the school districts are indispensable parties to this action; therefore the decree of the district court should be reversed. Counsel rely upon the cases of *Turner v. Cruzen*, 70 Iowa, 202 (30 N. W. Rep. 483), and *Moore v. Held*, 73 Iowa, 538 (35 N. W. Rep. 623).   These cases differ so radically from the case at bar, that discussion of them seems unnecessary.   In this action it is sought to prevent a threatened wrongful act of the district and county officers, in attempting to collect an illegal tax.   While the district in such a case might be made a party, it is not a necessary party.   *Anderson v. Insurance Co.*, 88 Iowa, 586 (55 N. W. Rep. 348).

III.   The constitutional provision touching indebtedness by such corporations is as follows:   "No county, or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding five per cent. on the value of the taxable property within such county or corporation, to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness."   Constitution, article 11, section 3.   Appellants insist that no relief can be afforded plaintiffs in this action unless they show that all the bonds in controversy are void.   The contention is, that although it is conceded that these bonds are, in a large part, illegal, still no relief can be granted unless plaintiffs show just what part or portion of each particular bond is illegal.   It is said that there is no evidence touching the character of the original indebtedness of the district, or the manner of its inception or creation, and that it must be assumed that it was created for a lawful purpose; that, for aught that appears, a portion of the original indebtedness was within the constitutional limitation, and hence a valid obligation against

the district, and, as to such portion, the district could legally refund such debt; that, for all that appears in this record, some of the bonds canceled by the decree of the district court, were taken in exchange for bonds which were, in fact, issued within the constitutional limitation. To sum up the argument of appellants on this point, we quote from their brief: "It does not affirmatively appear that any particular bond in controversy was issued in excess of the constitutional limit, or that the same is invalid in the hands of the present holder, or that, at the time it was issued, increased the indebtedness of the district beyond five per cent. of the taxable valuation of the property within the limits of the independent district of Riverside." It appears that none of these bonds were issued to pay judgments or judgment indebtedness, and that when they were issued the district was indebted in a sum exceeding fifty thousand dollars — ten times the amount it might legally be indebted, under the constitutional limitation. The same question here presented was discussed in *Anderson v. Insurance Co., supra.* It was there held that, if the claim that a part of the proceeds of the bond in controversy were, in fact, applied to a legal debt; was available, the burden of so showing would be with the holder of such bonds. There is no pretense that the appellants in this case, the holders of the bonds, have shown any facts which would enable us to say, that the proceeds of any particular bond, or bonds, were, in fact, used to discharge an indebtedness of the district which was legal. The admitted facts do not show that any of the proceeds of the bonds in controversy, in fact, were used to take up outstanding bonds. It does appear that that was the purpose of their being issued, but further than that the record is silent.

IV. It is contended that the issuance of the bonds in controversy did not increase the indebtedness of the district, but simply changed the form of the indebtedness then outstanding. If it appeared that the proceeds of the bonds in controversy, had in fact, been used to take up and cancel a valid indebtedness then existing, there might be some reason for claiming that the indebtedness had not been increased by their issuance. However, we are not called upon to determine the question which would be thus presented, as there is no evidence that, as a matter of fact, a single dollar realized from the sale of the bonds in controversy was used in payment or satisfaction of any prior indebtedness of the district, legal or otherwise. The evidence, so far as it shows anything relating to the proceeds derived from the sale of the bonds in controversy, is to the effect that such proceeds were converted by the officers of the district to their own use. It is manifest, therefore, that the indebtedness of the district, which then exceeded the constitutional limit, was increased by the issuance of the bonds in controversy.

V. Finally, it is said that the purchaser of the bonds had a right to act upon the presumption that the officers of the district had done their duty under the law. Purchasers of such bonds are bound, at their peril, to take notice of the constitutional limitation upon the power of such corporations to become indebted, and of such facts as the authorized official assessments disclose touching the valuation of all taxable property within the limits of the corporation. *Buchanan v. Litchfield*, 102 U. S. 278; *Dixon County v. Field*, 111 U. S. 83 (4 Sup. Ct. Rep. 315); *Lake County v. Graham*, 130 U. S. 674 (9 Sup. Ct. Rep. 654); *Township of Doon v. Cummins* (12 Sup. Ct. Rep. 220); *First Nat. Bank of Decorah v. District Tp. of Doon*,

86 Iowa, 330 (53 N. W. Rep. 301; *Anderson v. Insurance Co.*, 88 Iowa, 593 (55 N. W. Rep. 348). The decree of the district court is AFFIRMED.