### CITY OF HURON v. SECOND WARD SAV. BANK.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

No. 980.

1. MUNICIPAL CORPORATIONS—REFUNDING BONDS—ESTOPPEL BY RECITALS.

A municipal corporation is estopped from defending an action by an innocent purchaser to collect its negotiable bonds which recite that they were issued for the purpose of funding the bonds, warrants, or floating debt of the corporation, either on the ground that the warrants or bonds which they were issued to satisfy were void, or that the apparent debt which they were issued to pay was fictitious.

2. SAME—DIVERSION OF PROCEEDS.

The fact that a municipal corporation has diverted the proceeds of its negotiable securities from the lawful purpose for which they appear on their face to have been issued to an unlawful purpose is no defense to an action upon them by an innocent purchaser, who had no knowledge of or part in the diversion or waste.

3. SAME—LIMIT OF INDEBTEDNESS.

Bonds which are issued to fund a valid indebtedness neither create any debt nor increase the debt of a municipality, but merely change the form of indebtedness; and, as against an innocent purchaser in the open market without notice, the fact that, at the time the bonds were issued, the indebtedness of the city already exceeded the prescribed limitations, is no defense to an action on such bonds.

4. SAME.

Where an innocent purchaser buys, of others than the municipality or its agents, negotiable bonds which recite that they were issued to fund the debt or obligations of the municipality, the purchaser may rest on the legal presumption that the legal method was adopted that the issue of the bonds did not increase the debt of the municipality, and he is not required to consider or inquire concerning the question of excessive indebtedness.

**5. SAME—POWER TO ISSUE BONDS.**

A grant of power to borrow money and to issue bonds for all municipal purposes includes the power to issue bonds to pay or refund the indebtedness of the municipality.

**6. SAME—EXERCISE OF DISCRETION BY CITY COUNCIL.**

Where the charter of a city grants power to its council to appropriate money and provide for the payment of the expenses and indebtedness of the city, and gives it both the power to levy taxes and to borrow money and issue bonds for that purpose, the method by which the indebtedness of the city shall be paid is left to the discretion of the council; and when that discretion has been exercised, and bonds issued and bought by bona fide purchasers, it is too late for the courts to review it.

**7. CITY CHARTER—REPEAL BY GENERAL LAWS.**

The act of 1887 (Comp. Laws Dak. p. 257, §§ 1149, 1150) does not revoke the power granted to the city of Huron by its charter to issue bonds for all municipal purposes: (1) Because the powers and privileges granted by a special act or charter are not affected by general legislation on the same subject; (2) because the act of 1887 carries a proviso that it shall not be construed to limit or restrict the powers theretofore conferred by any special charter upon the council of any city.

**8. EVIDENCE—CERTIFICATE OF INDEBTEDNESS OF A CITY.**

On a trial of a suit against a city on its bonds, the certificate of the city clerk of the amount of the assessed valuation of property, and the amount of the indebtedness of the city, was immaterial, and should not have been admitted as evidence, for the purpose of showing that the city was estopped to prove the facts in this regard, when it did not appear that the holders of the bonds ever saw or relied on the certificate.

In Error to the Circuit Court of the United States for the District of South Dakota.

This is an action brought by the Second Ward Savings Bank, the defendant in error, against the city of Huron, the plaintiff in error, upon coupons cut from 16 funding bonds of $500 each, which that city issued on August 15, 1889. The defense was (1) that the bonds were issued to pay, and that their proceeds were devoted to the payment of, void warrants, which the city had issued to promote its selection as the capital of the state of South Dakota; (2) that these bonds created a debt in excess of the limitation prescribed by the organic act of the territory of Dakota; and (3) that the city had no power to issue funding bonds. The case was tried by the court. Objections were interposed to the complaint, to the bonds, coupons, and all the evidence for the defendant in error, and to the findings and judgment of the court upon the grounds outlined in this defense. The court made special findings, and rendered a judgment against the city. This was the case: The legislature of the territory of Dakota granted a special charter in 1883 to the city of Huron, which provided: "Sec. 7. The city council shall have power: * * * Part 28. To admit and allow all just claims against the city and direct the payment of such as are allowed. Part 29. To appropriate money and provide for the payment of the expenses and the indebtedness of the corporation. * * * Part 31. To levy and collect taxes not exceeding five mills on the dollar, for the purpose of providing a sinking fund with which to pay any future-bonded indebtedness of the corporation, and not exceeding ten mills on the dollar for all other municipal purposes in any one year, on all the property, real or personal, within the city limits, taxable according to the laws of the territory. Part 32. To borrow money, and for that purpose, to issue the bonds of the city in such denominations, for such length of time, not to exceed twenty years, and bearing such rate of interest, not to exceed seven per cent. per annum. as the city council may deem best, said bonds to express upon their face, under what authority and for what purpose they are issued, and may have interest coupons attached:" provided that such bonds may be issued only after an election at which a majority vote for their issue, and that they may not be sold for less than their par value. Act March 8, 1883 (Laws Dak. p. ——). The organic law of the territory of Dakota, which was enacted in 1886, provided that no municipal corporation should ever become indebted exceeding 4 per centum

86 F.—18

on the value of the taxable property within such corporation, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness, and that all bonds or obligations in excess of such amount should be void. Comp. Laws Dak. p. 34, § 112. Four per centum of the value of the taxable property in the city of Huron, according to the last assessment previous to the issue of these bonds, was $62,920.99; and at the time of their issue the city was indebted in the sum of $70,698.99, $54,500 of which was evidenced by bonds, and the remainder by warrants. The public records of the city showed the amount of taxable property and the amount of this indebtedness of the city. In 1887 the legislature of the territory of Dakota had passed a general law, which provided that any city in that territory might, upon a majority vote of its electors, incur a bonded debt which should not increase its total indebtedness above 4 per centum of the taxable property therein, for the purpose of erecting school buildings, purchasing fire apparatus, putting in waterworks, sinking public wells or cisterns, and putting in sewers, and improving streets. This law, however, contained this proviso: "And provided, that this act shall not be construed to limit or restrict the powers already conferred by any special charter upon the council of any city or municipal corporation." Id. p. 257, §§ 1149, 1150. Pursuant to an election held under its charter on April 2, 1889, at which a majority of the qualified electors of the city of Huron voted to authorize its city council to issue bonds to the amount of $25,000, for the purpose of funding the floating indebtedness of the city, the 16 bonds from which the coupons here in suit were cut were issued by the city council, and were sold in 1889 to Farson, Leach & Co. for $8,140. The ostensible purpose of these proceedings was to fund the floating debt of the city; but the real purpose, which was known to the citizens and officers of the city, was to raise money to pay the void warrants which the city had issued to carry on a political campaign to elect itself the capital of the state of South Dakota. The $8,140 was actually used by the city to pay these warrants, and none of it was so used until 20 days after it had been paid into the city treasury by Farson, Leach & Co. Each of these 16 bonds was signed by the proper officers of the city, and sealed with its seal, and each contained these words: "The city of Huron, ten years after date, for value received, will pay to bearer the sum of $500, at the American Exchange National Bank, New York, with interest thereon at the rate of six per cent. per annum, payable semiannually, according to the terms of the annexed coupons. Issued pursuant to an election held April 2, 1889, by authority granted by article 32, section 7, of the charter of the city of Huron, said charter approved by the legislative assembly of the territory of Dakota, March 8th, 1883. Issued for the purpose of funding the floating indebtedness of the city of Huron." The defendant in error purchased these bonds in the ordinary course of business from Farson, Leach & Co. The city paid the first four coupons upon them, but declined to pay more.

A. W. Wilmarth, for plaintiff in error.
Rollin B. Mallory, for defendant in error.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The first contention of counsel for the plaintiff in error in this case is that the bonds and coupons in controversy are void, although the former recite upon their face that they were "issued for the purpose of funding the floating indebtedness of the city of Huron," because they were in fact issued, and their proceeds were actually used, to pay city warrants which constituted no debt, but which the city of Huron had emitted in violation of its charter and of the organic act of the territory of Dakota. This proposition is without novelty. It presents the old questions which have often been answered by this and other courts: May a municipal corporation certify on the face of its bonds that it has issued them for a lawful purpose, and after the bonds have been bought by an innocent purchaser for value, in reliance upon this certificate, defeat them by the plea that the certificate was

false, and that they were actually issued for an unlawful purpose? May a city defeat the innocent purchaser of its bonds by diverting their proceeds, without his knowledge, from the lawful object for which it certified that it issued them? The plaintiff in error has had our answer to these questions.

In National Life Ins. Co. v. Board of Education of Huron, 27 U. S. App. 244, 255, 10 C. C. A. 637, 644, and 62 Fed. 778, 784, the citizens and officers of this city, with the intention of using the proceeds of bonds for the unlawful purpose of persuading the people of South Dakota to select that city as their capital, took the necessary steps to issue them for the lawful purchase of a school site and the erection of a school building, certified that they were issued for that purpose, and then diverted their proceeds to the illegal object, and undertook to defeat the bona fide purchasers of the bonds by the plea of their own wrong. This court answered that plea in these words:

"It is no defense for this corporation, as against bona fide purchasers, that during all this time it intended to use, and has since used, the money it raised from these bonds for the unlawful purpose of conducting a campaign for the state capital. * * * Such a plea cannot be entertained in a court of justice. The corporation is estopped from denying that these bonds were issued to raise money for a school site and school building."

In Re West Plains Tp. v. Sage, 32 U. S. App. 725, 733, 16 C. C. A. 553, 557, 69 Fed. 943, 946, the township, with the intention of using the proceeds of its bonds for the unlawful purpose of paying town scrip issued to purchase a sugar factory, took the necessary steps to issue, and certified that it had issued, the bonds to refund its indebtedness, then used the proceeds to take up the void scrip, and pleaded its own iniquity as a defense to its bonds. This court said:

"It is no defense for this township, against the action of an innocent purchaser who has invested his money in these bonds, that the township board, and the voters of the township who authorized the board to issue them, knew that the township had no indebtedness to refund, and that all these records and declarations were made to evade the law. Against a bona fide purchaser, the township is estopped from denying that these bonds were issued to refund its outstanding indebtedness."

In Board v. Howard, 49 U. S. App. 642, 27 C. C. A. 531, and 83 Fed. 296, this court again held that a municipal corporation which had recited in its bonds that they were issued "to refund its matured and maturing indebtedness heretofore legally created by said county" could not be heard to say to an innocent purchaser that a part of the indebtedness so refunded was void.

In Jasper Co. v. Ballou, 103 U. S. 745, the supreme court held that where the people of a county, at an election held under a refunding act, voted to issue new bonds to exchange for old ones, such a vote recognized the original bonds as binding and subsisting obligations, and that the city was thereby estopped from setting up that they were invalid because voted for at an election called by the supervisors instead of the county court, and that where at an election held according to law the people authorized their proper representatives to treat outstanding county obligations as properly authorized by law for the purpose of settling with the holders, and the settlement had been made, the validity of the obligations could no longer be questioned.

In Graves v. Saline Co., 161 U. S. 359, 374, 16 Sup. Ct. 526, the supreme court held that a county was estopped from contesting the validity of refunding bonds which had been issued to pay old bonds which were void under the decisions in Town of Eagle v. Kohn, 84 Ill. 292, and German Sav. Bank v. Franklin Co., 128 U. S. 526, 538, 9 Sup. Ct. 159.

In City of Cadillac v. Woonsocket Sav. Inst., 16 U. S. App. 546, 558, 7 C. C. A. 574, 578, and 58 Fed. 935, 939, the circuit court of appeals for the Seventh circuit held that the recital in the refunding bonds that they were "issued for the purpose of extending the time of payment of bonds formerly issued by said city," pursuant to an ordinance entitled "An ordinance authorizing new bonds of the city of Cadillac to be issued in place of, and to extend the time of payment of, former bonds of said city falling due," estopped the city from defending an action by an innocent purchaser of the bonds on the ground that the former bonds were void.

The defendant in error did not issue or procure the issuance of these bonds. This is not a case in which the officers of a municipality have violated the will of their constituents, and abused their power to rob them. It is a case in which all the people of a city, in a burst of wild enthusiasm, promoted or consented to the action of its representatives. The citizens of Huron must have known the real purpose for which these bonds were to be issued when they voted for them. Any one who owned taxable property in that city could have prevented the issue or the payment of the capital campaign warrants, or the issue of these bonds by a simple petition to any court which had jurisdiction. This thing was not done in a corner, or in the dark, or in haste. The electors of Huron voted to issue these bonds on April 2, 1889, but they were not issued until August 15, 1889, more than four months after the notice of the election and the vote. The city council was vested with the power and charged with the duty "to admit and allow all just claims against the city, * * * and provide for the payment of the expenses and indebtedness of the corporation," and it was authorized "to borrow money, and for that purpose to issue the bonds of the city." It issued these bonds pursuant to the vote of the qualified electors, of that city. It wrote upon the face of each of them the words "issued for the purpose of funding the floating indebtedness of the city of Huron," and sent them forth into the commercial world, to be sold upon this statement, when every officer of that city, every member of its city council, and many, if not all, of its citizens, knew that these bonds were issued to pay void warrants which evidenced no debt. Why did not the city council write the truth into these bonds? Why did it not write "issued for the purpose of paying the void warrants put forth by the city of Huron to elect itself the capital of the state"? The reason is obvious. The truth would not have persuaded investors to purchase the bonds. The words "floating indebtedness" have a clear and well-understood meaning in the commercial world. They do not mean void paper semblances of obligations which neither create nor evidence a debt. They mean "that mass of lawful and valid claims against the corporation, for the payment of which there is no money in the corporate treasury specifically designed, nor any taxation or other means

of providing money to pay, particularly provided." People v. Wood, 71 N. Y. 371, 374. When the city council of Huron, the body which alone had the power to determine the validity of claims against that city, put forth bonds in which it declared that they had been issued to fund the floating indebtedness of the city, it made the representation best calculated to assure purchasers of the incontestability of the bonds and most likely to induce them to buy. This was the reason why it inserted this declaration rather than the statement of the truth in the face of these bonds. The Second Ward Savings Bank, the defendant in error, is a corporation doing business in Milwaukee, in the state of Wisconsin. The charter of the city of Huron informed it that its city council had the power to determine the validity of all claims against that city. Some time after August 15, 1889, this bank found in the market in Chicago or Milwaukee these 16 bonds, issued by authority of a vote of the people of the city of Huron, and by direction of its city council, in which that council represented that they had been issued to fund the floating indebtedness of the city. The council and the city knew whether or not they had been so issued, and whether or not their proceeds had been applied to that purpose; and the bank did not know. It had the right to rely, and the city intended that it should rely, on the representation contained in its bonds; and now that the bank has bought them in reliance upon that statement, it would be a monstrous perversion of justice to permit the city to defeat their collection because its statement was false. As against this bank, the city is conclusively estopped from claiming that the bonds were issued for, or that their proceeds were applied to, any other purpose than the payment of the valid floating indebtedness of the city. For all the purposes of this action, the warrants paid with the proceeds of these bonds must be deemed to be the legal evidences of a just debt of the municipality.

A municipal corporation is estopped from defending an action by an innocent purchaser to collect its negotiable bonds which recite that they were issued for the purpose of funding the bonds, warrants, or floating debt of the corporation, either on the ground that the warrants or bonds which they were issued to satisfy were void, or that the apparent debt which they were issued to pay was fictitious. See the cases cited above, and Ashley v. Board, 16 U. S. App. 656, 675, 8 C. C. A. 455, 466, and 60 Fed. 55, 66; Meyer v. Brown, 65 Cal. 583, 26 Pac. 281; Moran v. Commissioners, 2 Black, 722; Hackett v. Ottawa, 99 U. S. 86, 96; Ottawa v. Bank, 105 U. S. 342, 343.

The fact that a municipal corporation has diverted the proceeds of its negotiable securities from the lawful purpose for which they appear on their face to have been issued to an unlawful purpose is no defense to an action upon them by an innocent purchaser who had no knowledge of or part in the diversion or waste. National Life Ins. Co. v. Board of Education, 27 U. S. App. 244, 255, 10 C. C. A. 637, 644, and 62 Fed. 778, 784; West Plains Tp. v. Sage, 32 U. S. App. 725, 733, 16 C. C. A. 553, 556, and 69 Fed. 943, 946; Commissioners v. Beal. 113 U. S. 227, 240, 5 Sup. Ct. 433; Cairo v. Zane, 149 U. S. 122, 137, 13 Sup. Ct. 803; Maxey v. Williamson Co. Ct., 72 Ill. 207.

Another proposition which is zealously argued in this case is that these bonds are void because they create a debt in excess of the limita-

tion prescribed by the organic act of the territory of Dakota. It is conceded that, at the time these bonds were issued, the indebtedness of the city of Huron already exceeded the limitation prescribed by that act. But, as we have already shown, the warrants which these bonds refunded must, for all the purposes of this case, be deemed to have evidenced a just debt of the city, and bonds which are issued to fund a valid indebtedness neither create any debt nor increase the debt of the municipality which issues them. They merely change the form of an existing indebtedness. · Board v. Platt, 49 U. S. App. 216, 25 C. C. A. 87, 89, and 79 Fed. 567, 569; E. H. Rollins & Sons v. Board of Com'rs, 49 U. S. App. 399, 26 C. C. A. 91, 98, and 80 Fed. 692, 698; In re State Bonds (Me.) 18 Atl. 291; Powell v. City of Madison, 107 Ind. 110, 8 N. E. 31; City of Los Angeles v. Teed (Cal.) 44 Pac. 580; Marion Co. Com'rs v. Harvey Co. Com'rs, 26 Kan. 181, 201; Hotchkiss v. Marion, 12 Mont. 218, 29 Pac. 821; Miller v. School Dist. (Wyo.) 39 Pac. 879. It is insisted, however, that the issue of these bonds did temporarily increase the debt of the city because their proceeds were not applied to any of the warrants until 20 days after these proceeds were paid into the treasury, and that, during this time while both the bonds and the refunded warrants were outstanding, the debt was increased. In support of this contention, counsel cites Doon Tp. v. Cummins, 142 U. S. 366, 378, 12 Sup. Ct. 220; Shaw v. School Dist., 62 Fed. 911; Coffin v. City of Indianapolis, 59 Fed. 221, and Ætna Life Ins. Co. v. Lyon Co., 44 Fed. 329, 342. The case in hand, however, is clearly distinguishable from these cases by the fact that the defendant in error bought these bonds of a third party in the open market, without notice of the fact that the debt of the city was increased by their issue, or of any other defect in them, while holders of the bonds in the cases cited took them with notice of their defects. In Ætna Life Ins. Co. v. Lyon Co. the bonds disclosed the amount of the contemporaneous issue, and this issue, standing alone, was in excess of the constitutional limitation of the debt of the county. In the case at bar, the entire issue voted was far within the limitation of the organic act. and the bonds did not disclose even this amount. Coffin v. City of Indianapolis was an action by a bidder to recover from the city money which he had deposited as a purchaser of bonds which he discovered were illegal, and refused to accept before they were delivered. In Shaw v. School Dist., the holder of the refunding bonds had received them in exchange for old bonds which he held, and which he knew had been issued in violation of the constitutional limitation. In Doon Tp. v. Cummins, 142 U. S. 367, 372, 378, 12 Sup. Ct. 220, the plaintiff did not buy the bonds for value, in good faith, and without notice of any defect from one to whom they had been issued by the corporation, as the bank did in this case; but he was himself the person to whom they were originally issued, and he knew when he took the first 10 bonds that the district exceeded the constitutional limit of its indebtedness in issuing them, and that it intended to exceed that limit still more. The opinion of the majority of the court in that case was that, where the debt of a municipal corporation already exceeded the constitutional limitation, the exchange of new bonds for old, bond for bond, would not increase the debt of the corporation, and would not be inconsistent with the

constitutional limitation, but that if the new bonds were sold, and their proceeds were subsequently used to pay the old bonds, there would be a temporary increase of the debt, which would violate the limitation and invalidate the new securities. The distinction seems to be more nice than real, and, in view of the vigorous dissent which is recorded with the opinion, we may be permitted to doubt whether it will ever be made again. Conceding, however, that it is well taken, it establishes the proposition that there was a practical and legal method by which the bonds here in question might have been issued by the city of Huron without increasing its indebtedness, and without violating the limitation found in the organic act. They might have been exchanged for warrants, dollar for dollar. Was not the bank which purchased these bonds in the open market, without notice of any defect, warranted in presuming that this method had been pursued? It was the only method by which the city could legally issue refunding bonds in 1889. The legal presumption was that the city and its officers had complied with the law, and had issued them in a legal manner. The city put forth each of these bonds with this recital on its face: "Issued pursuant to an election held April 2, 1889, by authority granted by article 32, section 7, of the charter of the city of Huron." If the decision of the supreme court in Doon Tp. v. Cummins is to be adhered to, the exchange of these bonds for the warrants, dollar for dollar, was a condition precedent to their lawful issue under this charter, and it was a condition which it was within the power and which it was the duty of the officers who signed these bonds to comply with. The recitals of the officers of a municipality who are invested with the authority to perform a precedent condition to the issue of negotiable bonds, or with authority to determine when that condition has been performed that the bonds have been issued "in pursuance of" or "in conformity with" or "by virtue of " or "by authority of" the statute, preclude inquiry, as against an innocent purchaser for value, as to whether or not the precedent conditions had been performed before the bonds were issued. National Life Ins. Co. v. Board of Education, 27 U. S. App. 244, 266, 268, 10 C. C. A. 639, 651, 652, and 62 Fed. 778, 792, 793, and cases there cited; School Dist. v. Stone, 106 U. S. 183, 187, 1 Sup. Ct. 84; Town of Colloma v. Eaves, 92 U. S. 484; Commissioners v. Bolles, 94 U. S. 104; Mercer Co. v. Hacket, 1 Wall. 83; Commissioners v. Beal, 113 U. S. 227, 238, 239, 5 Sup. Ct. 433; Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803; City of Evansville v. Dennett, 161 U. S. 434, 443, 16 Sup. Ct. 613. There was a legal method by which these bonds could have been issued by the city. The city certified that they had been issued according to law. If, upon any theory, the bonds of a municipality can be valid, an innocent purchaser has the right to presume that they are so, and that the recitals in them are true; and, after he has completed his purchase, that presumption is conclusive upon the corporation. E. H. Rollins & Sons v. Board of Com'rs, 49 U. S. App. 399, 26 C. C. A. 91, 98, and 80 Fed. 692, 699; City of Evansville v. Dennett, 161 U. S. 434, 443, 446, 16 Sup. Ct. 613; Chaffee Co. v. Potter, 142 U. S. 355, 363, 364, 12 Sup. Ct. 216.

The truth is that where an innocent purchaser buys, of others than the municipality or its agents, negotiable bonds, which recite that they

were issued to fund the debt or the obligations of the municipality, the question of excessive indebtedness does not arise, and the purchaser is not required to consider or inquire concerning it, because, if the old debt was refunded in the legal method pointed out in Doon Tp. v. Cummins, the debt of the municipality could not be increased, and the purchaser may well rest on the legal presumption that the legal method was adopted. The result is that the legal presumption and the recitals in these bonds preclude the city of Huron from defeating them on the ground that they increased its indebtedness. We have not arrived at this conclusion without a careful examination of the decisions of the supreme court of Iowa in S. C. & St. P. R. Co. v. Osceola Co., 45 Iowa, 168, Austin v. District Tp., 51 Iowa, 102, 49 N. W. 1051, and Holliday v. Hilderbrandt (Iowa) 66 N. W. 89. But this is a question of commercial law upon which the national courts are bound to exercise their own judgment. In so far as the decisions of the supreme court of Iowa are not in accord with the views expressed in this opinion, they do not commend themselves to our judgment, and are in conflict with the rules and principles which have been established by the decisions of the supreme court of the United States and of this court to which we have adverted, and which must govern this case. We cannot yield our own opinion, and depart from these rules, to follow the decisions in Iowa. The decisions of the supreme court are controlling in this court, and they commend themselves to our reason and judgment.

Another objection to these bonds is that the city of Huron was without power to issue them. The position is not entitled to extended consideration, because the power granted by the charter of the city of Huron is plenary. It was general, not special. It was not limited to specified purposes, but was to borrow money and issue bonds for all municipal purposes. It was "to borrow money, and for that purpose to issue bonds of the city in such denominations, for such length of time, not to exceed twenty years, and bearing such rate of interest, not to exceed seven per cent. per annum, as the city council may deem best." Charter of Huron, pt. 32. The whole is greater than any of its parts, and includes them all. The power to borrow money and issue bonds for all municipal purposes includes the power to do so to pay or refund the indebtedness of the municipality. Portland Sav. Bank v. City of Evansville, 25 Fed. 389; Simonton Mun. Bonds, § 126; City of Quincy v. Warfield, 25 Ill. 317; Morris & Whitehead v. Taylor (Or.) 49 Pac. 660; City of Galena v. Corwith, 48 Ill. 423; Village of Hyde Park v. Ingalls, 87 Ill. 13; Rogan v. City of Watertown, 30 Wis. 259, 268. There is nothing in the cases of Police Jury v. Britton, 15 Wall. 566; Merrill v. Monticello, 138 U. S. 673, 684, 11 Sup. Ct. 441; Heins v. Lincoln (Iowa) 71 N. W. 189, 191; New Orleans v. Clark, 95 U. S. 644; City of Waxahachie v. Brown, 67 Tex. 519, 4 S. W. 207; State v. Board of Liquidation, 40 La. Ann. 398, 4 South. 122; Middleport v. Insurance Co., 82 Ill. 565; Bogart v. Lamotte Tp. (Mich.) 44 N. W. 612; Brenham v. Bank, 144 U. S. 173, 182, 12 Sup. Ct. 559; Coffin v. Kearney Co., 12 U. S. App. 562, 6 C. C. A. 288, and 57 Fed. 137; or Shannon v. City of Huron (S. D.) 69 N. W. 598,—in conflict with this conclusion. No court has held in any of these cases that the unlimited power to borrow money and issue bonds for all municipal purposes ex-

cludes the power to do so to fund or pay municipal debts. In Police Jury v. Britton no power to issue bonds was granted to the parish, and the court simply held that this power was not to be inferred from the grant of general powers of administration. In Merrill v. Monticello a power was given to issue bonds for specified purposes, and the court held that this was not a grant of power to issue them for purposes not specified, on the familiar principle, "Expressio unius est exclusio alterius." In Brenham v. Bank and Heins v. Lincoln it was held that a mere power to borrow money without authority to issue bonds did not include the power to emit negotiable securities to evidence the debt. In Coffin v. Kearney Co. the statute expressly forbade the issue of bonds at the time when they were put forth; and in Shannon v. City of Huron the power to issue bonds was not under discussion at all. The other cases cited are as wide of the mark.

It is insisted, however, that the power granted by the charter to the city council to pay current expense warrants of the city by a levy of a tax implies the exclusion of the power to fund such warrants by the issue of negotiable bonds. The contention would be worthy of serious consideration if the express power to issue negotiable bonds was not also granted to the city council by this charter, but the charter grants to the council authority "to appropriate money and provide for the payment of the expenses and indebtedness of the corporation," and gives it both the power to levy taxes, and the power to borrow money and issue bonds for this purpose. It cannot be that the grant of both these powers excludes either, and the choice of the method by which the indebtedness of the city should be paid is left to the discretion of the council. That discretion has been exercised, and now that bona fide purchasers have bought the bonds in reliance upon its exercise, it is too late for the courts to review it.

Another position of counsel for the plaintiff in error is that the unlimited power to issue bonds granted to the city council in 1883 by the charter of this city was revoked or restricted to the power to issue them for the specified purposes of erecting public school buildings and other buildings for city purposes, procuring fire apparatus, putting in waterworks, sinking public wells and cisterns, putting in sewers and improving streets, named in the general law of 1887. Comp. Laws Dak. p. 257, §§ 1149, 1150. The position is untenable (1) because the charter of the city of Huron is a special act, and the act of 1887 is a general law, and powers and privileges granted by a special act or charter are not affected by general legislation on the same subject, but the special charter and the general laws must stand together, the one as the law of the particular case, and the other as the general law of the land (Gowen v. Harley, 12 U. S. App. 574, 584, 6 C. C. A. 190, 196, and 56 Fed. 973, 979; Dill. Mun. Corp. [4th Ed.] § 87; State v. Stoll, 17 Wall. 425, 436); and (2) because the act of 1887 carries a proviso which expressly declares that it shall not be construed to limit or restrict the powers theretofore conferred by any special charter upon the council of any city or municipal corporation. The conclusion of the whole matter is that the bonds and coupons, together with the facts that the defendant in error purchased them for value in the ordinary course of business, and that the coupons were not paid, established

a good cause of action, and none of the objections to the complaint, to the evidence of these facts, or to the judgment, can be sustained.

A single error in the trial of the case was well assigned. It was that the trial court admitted in evidence proof, and found as a fact, that the city clerk of the city of Huron issued a certificate on August 14, 1889, of the amount of the assessed valuation of the property within the city of Huron, and of the amount of that city's indebtedness. That certificate was immaterial, and should not have been received in evidence or noticed. It does not appear that the defendant in error ever saw or relied upon it, and it could in no way affect the rights of the parties to this litigation. The findings of the court, however, are ample to sustain its judgment after discarding its reference to this certificate, and it conclusively appears from the record and the findings that its admission in evidence could not have prejudiced the plaintiff in error. Error without prejudice is no ground for reversal. Smiley v. Barker, 55 U. S. App. 125, 28 C. C. A. 9, and 83 Fed. 684, 687. The trial below was conducted without prejudicial error; the judgment was founded in reason, and sustained by authority; and it must be affirmed.