ALEX TOD *et al.,* v. S. P. CRISMAN, Treasurer, *et al.,* Appellants.

**Necessary Parties:** INJUNCTION: A contractor to whom bonds have
1    been issued in payment for work is an indispensable party to a
     suit to restrain the further issuance of bonds to him, and the
     collection of taxes for the payment thereof.

**Necessary Parties:** NON-JOINDER: HOW TAKEN ADVANTAGE OF: Ob-
2    jection to a lack of proper, but not indispensable, parties must
     be raised in the trial court, but the question of a lack of
     indispensable parties may be raised for the first time on appeal.

**Jurisdiction:** NECESSARY PARTIES: Want of necessary parties does
3    not deprive the court of jurisdiction, but its decree is binding
     upon those before it until set aside in a direct proceeding for
     that purpose.

**Certiorari:** NECESSARY PARTIES: A contractor, to pay whom a board
4    of supervisors has issued bonds and ordered the collection of

123  693
129  674

123  693
144  118

a tax to pay the same, is a proper but not ordinarily an indispensable party in a certiorari proceeding to review the action of the board in respect thereto.

Certiorari: ADJUDICATION: A decree restraining a board of supervisors and other officials from issuing bonds and collecting taxes on account of a drainage ditch is not an adjudication, in a certiorari proceeding to review the subsequent action of the board, as limited and defined by the decree.

Certiorari to Review Action of Board of Supervisors: AMENDMENT OF RECORD OF BOARD: Where a board of supervisors was enjoined from levying a tax or issuing bonds to pay for the construction of a drainage ditch because not proceeding in accordance with law, it could not, on certiorari to review a subsequent order for levy of the tax because exceeding its authority as limited by the injunction decree, avail itself of an amendment of its record made after submission of the injunction suit, the same amounting to a new entry in its record showing an order for the ditch made at another time than that on which it had relied in the suit.

*Appeal from Palo Alto District Court.*—Hon. A. D. Bailie, Judge.

Thursday, May 5, 1904.

On June 27, 1899, A. N. Finnestad and others filed with the auditor of Palo Alto county a petition for a drain, under the provisions of section 1940 of the Code, accompanied with an appropriate bond. Thereupon a copy of the petition was placed in the hands of the county surveyor, who made report, with plat and profile, indicating accurately the location of the proposed ditch. Due notice was issued by the auditor, and served on each resident owner, through or abutting upon which the proposed improvement was to be made. Nonresident owners were served with notice by publication. Some of the plaintiffs and another filed claims for damages. September 4, 1899, was fixed as the time the board of supervisors would hear all objections and claims for damages. What was then done is not disclosed on the original records. On September 19th appraisers were appointed, and they reported that no damages should be allowed. The only order of the board with reference to the construction of the ditch bears date November 27, 1899, and is in words following: "It appearing from the report of the appraisers appointed by the auditor of said county to asses the damages sustained by Albert Voight, D. F. Hantleman, Fred Schulke, and

Jacob Walz, filed in the office of the county auditor September 19, 1899, that the claimant will sustain no damage by the reason of the establishment of the ditch petitioned by Lars M. Finnestad *et al.*, and the board of supervisors of said county finding such improvement conducive to the public welfare, it is ordered that the ditch prayed for be located and established as follows: Commencing in a slough near the center of section 5, township ninety-seven (97), range thirty-one (31), and running thence through sections 5, 4, 9, 16, 15, 22, 27 of said township No. 97, range 31 west, fifth P. M., as shown by plat and profile of engineer appointed to locate same, and which is on file in the office of the county auditor of Palo Alto county, Iowa." Upon due notice the contracts for doing the work were made and approved by the board April 2, 1899. Appointment of persons to inspect and classify the lands, and apportion the cost, expenses, etc., was made April 20, 1900, and report filed May 3rd following. On June 8th the board of supervisors concluded that the cost would be too much to levy on the land in one year, and ordered "that bonds be issued for aforesaid amount of $7,400, with interest at the rate of six per cent. per annum, payable as follows: Seven hundred and fifty dollars ($750) May 1st for each of the years 1901, 1902, 1903, 1904, 1905; and seven hundred and fifty dollars ($750) November 1st for each of the years 1901, 1902, 1903, and 1904; and six hundred and fifty dollars ($650) November 1st, 1905—together with interest payable semi-annually, and that the auditor be directed to sell the same for cash at not less than par, or pay the same at par to contractor as work progresses, and in accordance with contract; and the auditor of Palo Alto county and chairman of the board of supervisors are hereby authorized and directed to sign and execute bonds with interest coupons as provided herein." An annual tax sufficient to meet the installments and interest was resolved upon, and the lands affected set apart as drainage district No. 1. At the September, 1900, session, the board attempted to levy the tax proposed, and on March 14, 1901, an action in equity was begun by these plaintiffs and

two others against the members of the board of supervisors, county treasurer, and county auditor, praying that the treasurer be restrained from collecting said taxes; the board from issuing any more bonds to the contractor, or paying anything on account of the ditch; and on final hearing the defendants be enjoined from levying or collecting any moneys or taxes for the purpose of paying any of the bonds or interest thereon, and that the taxes assessed be canceled and held for naught. Issue was joined, and on hearing a decree entered as of May 30, 1901, awarding the relief prayed. Thereafter, and on June .5, 1901, the board of supervisors caused to be entered on the minute book the following:

"The records of the board of supervisors of Palo Alto county, Iowa, for the regular September session, 1899, commencing on the 4th day of September, 1899, is hereby amended by inserting of the said session of said board on September 5, 1899, the following, to-wit:

"And the petition of Lars M. Finnestad and others filed in the office of the auditor of Palo Alto county, Iowa, on the 27th day of June, A. D. 1899, for the location and construction of a certain drain in and through sections five, four, nine, sixteen, fifteen, twenty-two, and twenty-seven, in Independence township, Palo Alto county, Iowa, having been presented to the board of supervisors, the said board, on investigation, duly finds and determines that the said petition is duly signed by a majority of the persons resident in Palo Alto county, Iowa, owning land abutting upon said proposed drain. And the petition sets forth the necessity of said drain, the starting point, route and terminus thereof, all in due and sufficient form, and further finds that there was filed with said petition a bond with sufficient sureties, approved by the county auditor, conditioned as provided by law, and the board further finds that the said auditor has placed a copy of said petition in the hands of the county surveyor who has made a survey of the proposed improvement and returned a plat and profile thereof, in form and contents conforming to law. * * *

"And the board, proceeding to hear said petition, duly finds that said drain or improvement so petitioned for is conducive to the public health and convenience and welfare, and, claims for damages on account of said improvement having been filed, it is ordered that further proceedings be adjourned to the next regular session of this board."

And the said minutes of the said session are amended by inserting therein and adding thereto the foregoing as of the regular September session, 1899, of the board of supervisors of said county.

Following this is a certificate of the auditor that the amendment is according to the facts, and was made from his personal recollection, and that the matters were omitted from the record of September 5, 1899, through accident and mistake, and also a resolution of the board of supervisors finding the facts as stated in the foregoing amendment, and as remembered by two members of the board, and ordering "that the said amendments of said minutes made by said auditor be, and the same is hereby, confirmed, approved, and established, and the same is hereby made a part of the records and minutes of the proceedings of the said regular September, 1899, session of said board, and the said minutes and records are amended accordingly as of and from the September, 1899, session of said board."

At an adjourned session, November 7, 1901, after notice to the taxpayers, the board ordered the levy of a tax as before, and the issue of bonds in the sum of $5,700, payable at intervals during the four succeeding years. This proceeding to test the legality of the action of the board of supervisors was begun September 23, 1902, and on final hearing the orders aforesaid were annulled. The defendants appeal.— *Affirmed.*

*E. A. Morling* and *F. C. Davidson* for appellant.

*Kelly & Kelly* for appellee.

Ladd, J.—In the decree entered May 30, 1901, the defendants were enjoined from levying or collecting taxes or

issuing bonds on account of the ditch ordered by the board

**1. NECESSARY parties: injunction.** of supervisors to be constructed. But Dooley,. with whom the contract for its construction had been made, and to whom the bonds for the work had been executed, was not a party to that action. He was vitally interested in the result, for the decree purported to eliminate his only source of compensation. The officers of the county had but a nominal interest in the suit, and were as likely to be adverse to the contractor as otherwise. The decision of the court, whatever it might be, could not touch them financially. Those materially interested were the owners of the land taxed, and the contractor entitled to receive the taxes if valid. As said in *City of Anthony v. State,* 49 Kan., 246 (30 Pac. Rep., 499): "There are sufficient real controversies in all countries between real parties in interest to be litigated in the courts of justice, without resorting to fictitious controversies between nominal parties, or parties whose interests may all be on the same side." As in point, see *Osterhoudt v. Supervisors,* 98 N. Y., 243; *Maxwell v. Auditor General,* 125 Mich., 621 (84 N. W. Rep., 1112); *Beck v. Allen,* 58 Miss., 143; *Shields v. Pipes,* 31 La. Ann., 765; *Litchfield v. Polk Co.,* 18 Iowa, 70; *Moore v. Held,* 73 Iowa, 538; *Postlewait v. Howes,* 3 Iowa, 365. Estimates had been made by the engineer, and these allowed, so that the contractor had a subsisting interest in the levy of taxes for his payment. In this respect the case is to be distinguished from *Palmer v. Rich,* 12 Mich., 414, where the contractor was held to have no interest in the taxes, and therefore not to be a necessary party. Here this was his only source of compensation. Did the court, in his absence as a party, acquire jurisdiction to enter the decree? The parties to an action are sometimes divided into three classes: (1) Formal parties. (2) Necessary but not indispensable parties. These are persons having an interest in the controversy, who should be made parties, to the end that it may be entirely adjudicated and complete justice done. Their interests, however, are separable from those of the parties before the

court, so that the court may proceed to final decree, and do justice therein, without affecting prejudicially the interests of others. They are usually referred to as proper parties. (3) Necessary and indispensable parties, or those having an interest of such a nature that final decree cannot be entered without either affecting their interests, or leaving the contro- versy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. *Shields v. Barrow,* 17 How., 130 (15 L. Ed., 158); *Mechanics' Bank v. Seton,* 1 Pet., 299 (7 L. Ed., 152). Manifestly the con- tractor belonged to the last class, for any decree entered could not be permitted to stand as an obstacle to his claim of com- pensation from the taxes levied. He would still have the right to his day in court, and then to insist upon the validity of the proceedings, and the collection of the taxes out of which he would be entitled to the payment of the contract price. In other words, the decision without him as a party could not be final. The authorities relied upon by appellee are not in point. In *Anderson v. Orient Ins. Co.,* 88 Iowa, 580, the county was held not to be a necessary party, because there was "no attempt to divest the county of a right or impose up- on it an obligation," and the same reason controlled the deci- sion in *Holliday v. Hilderbrandt,* 97 Iowa, 180. In neither case was a necessary party omitted.

No little difficulty, however, has been experienced in dis- criminating between the two latter classes. Where those be- longing to the second class—that is, proper but not indispen-

2. NECESSARY parties: non joinder: how taken advan- tage of.

sable parties—have been omitted, objection must be taken by demurrer or answer in the district court, and cannot be made for the first time on appeal. Sections 3561, 3562, Code; *Bouton v. Orr,* 51 Iowa, 473; *Coe v. Anderson,* 92 Iowa, 515; *Zion Church v. Parker,* 114 Iowa, 6. The rule is dif- ferent, however, when the omitted parties belong to the third class, and are indispensable to the final adjudication of the rights of the parties, for then the point may be raised for the first time on appeal. *Parshall v. Moody,* 24 Iowa, 314; *Crosby v. Davis,* 9 Iowa,

98; 15 Ency. P. & P., 689, and cases collected. This is on the ground that statutes like section 3466 of the Code are construed as mandatory in their nature. It provides that, "when a determination of the controversy between the parties before the court cannot be made without the presence of other parties, it must order them to be brought in." Says Mr. Pomeroy, in his work on Remedies and Remedial Rights: "If there are other persons, not parties, whose rights must be ascertained and settled before the rights of the parties to the suit can be determined, then the statute is peremptory. The court must cause such persons to be brought in. It is not a matter of discretion, but of absolute judicial duty. The enforcement of this duty does not rest entirely upon the parties to the record. If they should neglect to raise the question, and to apply for a proper order the court upon its own motion will supply the omission, and will either bring in the new parties, or remand the cause in order that the plaintiff may bring them in." The want of indispensable parties, as seen, may be raised for the first time on appeal; and there are authorities to the effect that, where the want thereof is apparent from the record, the appellate court should *sua sponte* raise the question and remand the cause. *Morgan v. Blatchley,* 33 W. Va., 155 (10 S. E. Rep. 282).

It does not follow, however, that a decree entered in the absence of necessary parties is not binding on those before the court. The rule laid down by the authorities is that in no case does the court's jurisdiction over the subject-matter and the parties properly before it depend upon the absence of other parties, however, necessary these may be to a complete adjudication. Undoubtedly those who have not been made parties may collaterally dispute the decree and deny its validity, and probably it should not be regarded as an obstacle to them in obtaining any relief to which they may be entitled. But its efficacy between the parties before the court does not depend upon the fact that others may or ought to have been made parties. Their absence is not a defect involving the jurisdiction of the court over the

3. JURISDICTION: necessary parties.

parties who are present, or over ~ the subject-matter of the suit, in so far as those parties are concerned. "The court may nevertheless proceed to a decree, and such decree, though rendered in violation of the rules and practice of equity in such cases, is not void as between the parties to it. It is irregular, but not void. It binds the parties to it until set aside in some direct proceeding for that purpose. And the reason of this is obvious. Jurisdiction exists wherever there is a suit, the subject-matter of which is cognizable in a court of chancery, and parties are before the court whose rights in relation to such subject-matter the court may adjudicate; and the effect of such adjudication between the parties, until reversed or set aside, does not depend upon the fact that the power of the court may have been erroneously exercised in making it. If there be necessary parties wanting, whose absence may render the adjudication fruitless or ineffectual, because the rights of such parties cannot be determined, that may be good cause for arresting proceedings or dismissing the suit, but it does not deprive the court of the power to proceed." *Supervisors v. Mineral Point Ry. Co.,* 24 Wis., 93, 131; *Smith v. Ford,* 48 Wis., 115 (2 N. W. Rep. 134); *Joy v. Wirtz,* 1 Wash. C. C. 517 (Fed. Cas. No. 7,554). See *Fulliam v. Drake,* 105 Iowa, 615.

II. Appellants also contend that the contractor was a necessary and indispensable party to this proceeding by *certiorari.* Our statute provides that the writ "shall command

4. CERTIORARI: the defendant therein to certify to the court
necessary
parties.        from which it issues, at the specified time and place, a transcript of the record and proceedings, as well as the facts of the case describing them or referring to them or any of them with convenient certainty and also to have then and there the writ." Section 4155, Code. "The writ must be served and the proof of such service made in the same manner as is prescribed for the original notice in the district court, except the original shall be left with the defendant and the return of service made upon copy thereof." Section 4158. Manifestly the parties defendant are to be brought in

by the service of the writ of *certiorari,* rather than an original notice. The entire proceeding is leveled at the tribunal, board, or officer alleged to have exceeded the jurisdiction or authority conferred by law, and ordinarily these are to be deemed proper parties defendant of record. *Chambers v. Lewis,* 9 Iowa, 583; *Baker v. Superior Court,* 71 Cal., 583 (12 Pac. Rep., 685.) The response is not an answer, but "a transcript of records," etc., as above stated. The hearing upon "the record, proceedings and facts as certified and such other testimony oral or written as either party may introduce," and the court is to "give judgment affirming or annulling the proceeding in whole or in part, or, in its discretion, correcting the same and prescribing the manner in which the parties or either of them shall further proceed." Section 4160, Code. But an answer may be filed to the end that the issues be sharply defined, and the cause be decided on the merits, rather than on technical points merely, for the petition in this class of cases is always addressed to the sound discretion of the court. And probably it is the better practice, whenever the defendants rely upon extrinsic evidence, to show that no injustice has been done. The writ, however, is in the nature of a writ of error to the inferior tribunal, board or officer, the court determining from an inspection of the entire record whether the proceedings are illegal, and therefore the pleadings should be in the name of the defendants of record.

But it does not follow that persons interested in upholding the proceedings assailed may not be accorded the opportunity of being heard. Technically they may not, under our statute, be designated as parties defendant in the pleadings; but the court will ordinarily see to it, before deciding the case, that all such are given a hearing if they so desire. In *Worcester & N. R. Co., v. Railroad Commissioners,* 118 Mass., 561, the court, while expressly declaring that none save the tribunal, board, or officer whose jurisdiction or authority is assailed should be made parties defendant, held that persons interested in upholding the proceedings sought to be annulled might, by permission, and in the name of de-

fendants, oppose the petition. The practice prevailing in England is to serve a copy of the writ upon the attorneys of record in the proceedings assailed, while the writ, when is-sued by the Supreme Court of the United States, is accompanied with a citation to the party. In Pennsylvania "the court of review will take care that notice is given, and that the proper parties are put on the record." *Com. v. McAllister,* 1 Watts, 307 (26 Am. Dec. 70.) No adjudication will be had in New Jersey when interested persons have not been notified. *State v. Inhabitants of Township of West Hoboken* 39 N. J. Law, 421. To the same effect, see *Commonwealth v. Peters,* 3 Mass., 229; *Black v. Brinkley,* 54 Ark.; 372 (15 S. W. Rep., 1030); *State v. Mayor, etc.,* (N. J. Sup.) 44 Atl. Rep. 844. See *Ex parte Buckley,* 53 Ala., 42; *Clark v. Write;* 67 Ind., 224; *Keerans v. Keerans,* 109 N. C., 101 (13 S. E. Rep. 895); 4 Cyc. P. & P., 196, *et seq.* The court, in *State v. Commissioners of Washoe Co.,* 23 Nev. 247 (45 Pac. Rep., 529,) in announcing the same rule, remarked that "it is a well-known principle that no man's rights can be concluded by a judgment unless he is a party to the action, and has been given his day in court." In *People v. Walter,* 68 N. Y., 403, the court, after noticing the absence of persons interested from the record, said: "A judgment of any court, whatever its jurisdiction, is only evidence against parties to the record, or those in privity to them. The records would not be competent in an action upon the bonds, and, if our judgment should be adverse to the validity of the proceedings under the statutes authorizing the issuance of bonds, the bondholders might laugh at our decision, knowing it could not affect them, and if we should affirm the action of the assessors, the town authorities might snap their fingers, and in an action on the bonds make every defense which legal skill should suggest without the slightest impediment from our opinion or judgment. It is a fundamental principle that a party cannot be deprived of his property or civil rights, except by due process of law, or affected by judgments in actions and proceedings to which he is not a party, and in which he has not had his day in court." It is to be observed.

however, that the last two cases mentioned were determined on other grounds. The statutes regulating proceedings by *certiorari* in the several states differ radically, so that decisions outside of the state are of little aid. The real merits of the original controversy are not involved. Even though the proceedings assailed are annulled, the parties are merely relegated to other remedies. The only question to be determined is, did the board, officer, or tribunal act illegally or without jurisdiction? The decision will seldom affect the substantive rights of any one.

But according to the opinion of some members of the court the circumstances may be such that passing upon the issue of jurisdiction will be determinative of such rights. For instance, if the restraining decree be conceded to have been correct, then a decision as to whether the subsequent amendment of the record by the board of supervisors so changed the situation that the second levy and issue of the bonds were legal might prove conclusive as to the contractor's right to the taxes levied and the bonds issued; for, if these be held illegal, he has been deprived thereof without a hearing. Other members think that in no event can the conclusion announced deprive any one of his appropriate remedy, and in no case are any other than the officer, board, or tribunal whose action is assailed a necessary party to the record. The conclusion we have reached renders it unnecessary to decide this point.

III. Counsel have argued the question as to whether the former decree is *res adjudicata* in this action. We are at a loss to understand how the inquiry can arise in this pro-

5. CERTIORI: adjudication. ceeding, in which the only point at issue is whether the board of supervisors acted illegally by exceeding its authority as limited and defined by the decree entered in the injunction suit. That issue was not presented, and is raised in this proceeding for the first time. We shall not take the trouble to ascertain whether there are parties plaintiff in this proceeding who were not parties to the former suit. It is

enough that some of the plaintiffs are the same in both, and have the right in this proceeding to question the legality of the action of the board in ignoring the injunction, for its character was such that it could not be violated without affecting all parties whose land was subject to the payment of the drainage taxes.

IV. The board of supervisors was enjoined from levy-ing taxes or issuing bonds to pay for the construction of the ditch. Unless relieved by subsequent events, the members

6. CERTIORARI to review action of board of supervisors: amendment of record of board.

were bound to obey this restraining order of the court. Appellants argue that, conceding the decree to have been correct, the record of the board of supervisors has been so amended, and such notices given to the parties interested before the second levy, as that it is valid. "The supervisors are re-quired to keep a book, to be known as the 'Minute Book,' in which shall be recorded all orders and decisions made by it; excepting those relating to highways." Section 442, Code. "The county auditor shall record all the proceedings of the board in proper books provided for that purpose." Section 470, Code, September 4, 1899, was fixed in the notices issued by the auditor, and served, as the time when the board of supervisors would hear all objections and claims for dam-ages. The "minute book," as it originally stood, contained no reference to such hearing, and the first entry concerning the ditch was that of November 27, 1899, in which it appears that "the board of supervisors of said county, finding such improvements conducive to the public welfare, it is ordered that the ditch prayed for be located, and established." There was no finding that a "majority of the persons resi-dent in the county, owning land abutting upon such proposed improvement" had filed the petition for the ditch. Section 1940, Code. See *Richman v. Board of Supervisors*, 70 Iowa, 627; *Abney v. Clark*, 87 Iowa, 727. After the evi-dence had been introduced in the equity suit, and the court had announced its decision declaring all the proceedings to

have been without jurisdiction, the defendants, on June 1, 1902, asked leave to amend their answer and cross-petition by setting up that by accident and mistake the records of the board of supervisors failed to set out the proceedings of said board of September 5, 1899, and that it be allowed to amend the same in conformity to the facts. Amendments showing an amendment of said record were filed—that to the cross-petition by way of supplement. These were stricken on motion, and a decree entered as of the date the decision was announced, May 30, 1899. The petition had distinctly alleged that the location of the ditch was determined at a time other than that provided by law, and that less than the number of persons required had signed the petition. The answer controverted this, and averred the filing of claims September 1, 1899; that further proceedings were adjourned to the next regular meeting of the board; and that "at the next regular session of the board of supervisors the said board proceeded to locate and did locate and establish the said drain as by law provided." So the jurisdiction of the board of supervisors had been put in issue, and defendants had asserted that the ditch was located and established at the November, 1899, session of the board. It was not until an adverse decision had jogged their memories that they were able to recall that everything essential to the validity of the proceedings had been done at the September, 1899, session. It was then that the amendment to the record was made.

The right of officers to amend a record to be kept by them is quite generally recognized, and, when so amended, it is held by some courts not to be open to collateral attack. As to whether this may only be done when in office, and what evidence must be relied upon, there is some difference of opinion. See *Andrews v. Inhabitants of Boylston,* 110 Mass., 214; *Halleck v. Inhabitants of Boylston,* 117 Mass., 469; *Vaughn v. School District,* 27 Or., 57 (39 Pac. Rep. 393); *Inhabitants of Jay v. Inhabitants of Carthage,* 48 Me., 353; *Welles v. Battelle,* 11 Mass., 477; *Hartwell v. Inhabitants of Littleton,* 13 Pick., 229; *Gibson v. Bailey,* 9 N.

H., 168; *Kiley v. Cranor,* 51 Mo., 541; *Mott v. Reynolds,*
27 Vt., 206; *Ohio & M. Ry. Co. v. People,* 119 Ill., 207
(10 N. E. Rep. 545); *Mann v. Le Mars,* 109 Iowa, 251;
*Ryder's Estate v. City of Alton,* 148 Ill., 94 (51 N. E. Rep.
821); *Everett v. Deal,* 148 Ind. Sup., 90 (47 N. E. Rep.
219); *Leominster v. Conant,* 121 Mass., 384 (2 N. E. Rep.
690); *People v. Gilon,* 121 N. Y., 551 (24 N. E. Rep.
944); *State v. Ry.* (Nev.) 30 Pac. Rep. 890; *Sheldon v.*
*Marion,* 101 Mich., 256 (59 N. W. Rep. 614). In *City of*
*Covington v. Ludlow,* 1 Metc. (Ky.) 295, it appeared that
an ordinance had been reported in August, 1854, and in
1856 the record was amended by adding to the journal of
the proceedings, "Passed unanimous." The court, conced-
ing the power to amend, held that it would not follow that
"a different council, whose only knowledge of the proceed-
ings that actually occurred at a previous meeting of the board
would have to be derived from the information of other per-
sons, could properly exercise such power. The city council
keep a journal of their proceedings. The evidence in that
journal furnished evidence for their actions in their official
capacity. If changes and amendments can be made at a re-
mote period, and by a different board, then all the entries be-
come uncertain, and none can be relied upon, even by those
who are acting under them. The evils resulting from such
practice would be unendurable. All confidence in the en-
tries in the journal would be destroyed, and the action of the
city council at the meeting held by them would be a matter
open for controversy, which would have to be determined by
an appeal to the uncertain recollection of witnesses." The
amendment was declared unauthorized. But in *Board of*
*Education of Glencoe v. Trustees,* 174 Ill., 510 (51 N. E.
Rep. 656), the defendant's record of May 6, 1896, was
amended July 25th following. As so amended, it failed to
show jurisdictional facts for the change of territory, and an
amendment made April 27, 1897, finding these, was upheld,
even though there had been a change of the personnel of the
board of trustees. In *Hadley v. Chamberlin,* 11 Vt., 618,

the record of the school district, when first offered in evidence, did not show the appointment of defendant as tax collector. The defendant, claiming to be or to have been clerk, thereupon amended the record, and again offered it. It appears to have been rejected; the court saying: "It is undoubtedly the duty of all recording officers to see that the proceedings of the corporation are correctly recorded, but the practice of amending and altering records, when a controversy has arisen, to meet a particular case, or in consequence of a decision of the court, cannot be defended; and the case before us shows the impropriety of the procedure." But in *Mott v. Reynolds,* 27 Vt. 206, the record, when first offered in evidence, failed to show the signature of the clerk to a copy of a warning to electors. It was rejected, but received after the clerk, who was not a party to the action, had amended by attaching his signature. The case is distinguished from *Hadley v. Chamberlin* on the ground that in the latter the amendment was made by a party to the suit, and that the conclusion was finally reached that, in any event, Chamberlin was not an officer.

In a proper case no good reason is perceived for denying an officer the right to so correct his record as that it shall speak the truth. Of course, it should be exercised with caution, and doubts with reference to the existence of defects should ordinarily be resolved against them. But litigation is often the occasion of mistakes being discovered, and the mere fact that these are ascertained in the course of a trial ought not to be held a bar to their correction. But this amendment was not made until after the cause had been submitted. It was not offered in evidence. Nor was the undertaking to amend an imperfect record of the proceedings of the board with respect to the petition for the ditch, but to supply a wholly new entry, and to do so after the case in which the board had relied on an order made at an entirely different time had been decided adversely to it. The propriety of amending a record under these circumstances may well be questioned. Viewed from the standpoint of the plaintiffs

in the former action, the change in the record was no more
or less than a change in evidence of a fact in issue. It was
an attempt by defendants to manufacture new evidence after
the issue had been decided against them. Parties cannot be
permitted to thus experiment in litigation. They may not
test the law with one state of facts, and upon an adverse de-
cree bring forward another, and insist upon a second adjudi-
cation of precisely the same issue. If matters appropriate.
for the consideration of the court have been omitted, the
remedy is by motion or petition for new trial. Such omis-
sion furnishes no excuse for ignoring the judgment or decree
of the court. Something is claimed because of notices of the
proposed levy having been served after the former decree.
This did not have the effect of materially altering the situa-
tion as such notices were not exacted by the statutes. *Beebe
v. Magoun,* 122 Iowa, 94; *Smith v. Peterson,* 123 Iowa, 673.
Nor are plaintiffs estopped from insisting upon obedience to·
the restraining decree. Nothing has occurred since its entry
upon which defendants can rest such a contention.—
AFFIRMED.