IN THE MATTER OF THE LOCATION AND ESTABLISHMENT OF DRAINAGE DISTRICT NO. 3, HARDIN COUNTY.

**Drainage:** PETITION: SUFFICIENCY OF DESCRIPTION. The purpose of 1 the petition for the establishment of a drainage district is to bring to the attention of the board of supervisors the desirability of the proposed improvement, and to describe the location and boundaries of the district with such definiteness as will enable the board to determine whether the improvement is desirable and proper; it need not describe in detail each tract of land included in the district, nor need it specifically describe and locate the main drain or laterals. A description of the starting point of the main drain as somewhere near a certain section, and a general reference to the construction of necessary laterals, is sufficient.

**Same:** PROCEEDINGS FOR THE ESTABLISHMENT OF A DRAINAGE SYSTEM: 2 SUFFICIENCY OF BOND. Where, as in this case, several petitions for the establishment of a drainage district were filed, all of which included much of the land described in the last petition which was acted upon by the board, the proceedings from the filing of the first to the filing of the last petition were con-

tinuous; and a bond filed prior to the last petition was sufficient although referring simply to the first petition filed, and although the sureties were also petitioners.

**Same:** INSUFFICIENCY OF BOND: WHEN IMMATERIAL. The purpose of requiring a bond to be filed with the petition for the establishment of a drainage district is to protect the county and other interested persons against expense of the preliminary proceedings in case the board declines to establish the district; so that where the board establishes the district the bond has no further purpose to serve, and its insufficiency can not be made a ground for questioning the validity of the action taken.

**Establishment of drainage district:** REPORT OF ENGINEER: FILING SAME: JURISDICTION. The board·of supervisors has no jurisdiction to establish a drainage district in the absence of the report of an engineer; nor to establish a district different from that recommended by the engineer; but where it appeared that the engineer had made the report and the board acted thereon, its act was jurisdictional although the report had not at the time been filed with the auditor, where the same was subsequently formally filed. Nor did the fact that the report was taken from the files before final action of the board in establishing the district affect its jurisdiction.

**Same:** REPORT OF ENGINEER: INACCURACIES. Where the report of the engineer furnishes the board of supervisors with necessary information to enable them to act in the establishment of à drainage district, mere inaccuracies in the report are not jurisdictional, and will only be considered in determining whether the board was justified in establishing the proposed district.

**Same:** AMENDMENT OF SUPERVISORS MINUTES: EVIDENCE. A board of supervisors may amend the previous record of its proceedings relating to the establishment of a drainage district, and it will be presumed that it acted properly in so doing, although an appeal is pending in which the original record had been offered in evidence. And prior to a determination of the appeal additional evidence may be offered showing the correction.

**Examination of witnesses:** REFERENCE TO MEMORANDA. A commissioner who examined the lands within a drainage district may refresh his memory by referring to memoranda made by him at the time and known to be correct, when testifying to the character of the land examined.

**Drainage:** DETERMINATION OF BENEFITS. The purpose of establishing a drainage district is that by a general system the whole land included may be more effectually drained than it otherwise could

be; and the mere elevation of part of the land above the proposed water course is not the sole test in determining the benefit to be derived by it from the improvement.

**Same:** REVIEW ON APPEAL. The court, on appeal from the action of the supervisors in the matter of the establishment of a drainage district, may take into consideration the relation of the benefits to the cost of the improvement, in determining whether the board properly established a district, where an assessment of property assumed to be benefited is involved.

**Establishment of drainage district:** AREA INCLUDED. Where the swampy lands within a proposed district can be more effectually drained to the substantial benefit of the whole area by the establishment of a single district than by dividing the territory into smaller districts, as where the main ditch as proposed follows in general the course of a creek running through the entire tract, the entire area may properly be included in one district.

**Same:** EXERCISE OF LEGISLATIVE POWER: JUDICIAL REVIEW. The act of the supervisors in fixing the boundaries of a drainage district is an exercise of legislative power which the courts will not undertake to control; it is only when the board proceeds to assess the land for the improvement that the courts may be appealed to, and on this question the inclusion of land within the district is not of controlling importance.

**Same.** Land included within a drainage district may receive other benefits than mere drainage of the particular tract, as clearing the district and highways of unhealthful and obnoxious swamps, which are to be taken into consideration in determining whether the lands should be included.

*Appeal from Hardin District Court.*—HON. R. M. WRIGHT, Judge.

SATURDAY, DECEMBER 18, 1909.

REHEARING DENIED, WEDNESDAY, MARCH 16, 1910.

FROM the action of the board of supervisors of Hardin County purporting to locate and establish Drainage District No. 3, various landowners interested took separate appeals to the district court, where these appeals were

consolidated, and the court entered a decree confirming the action of the board of supervisors. From this decree those who were appellants in the district court prosecute their appeal to this court.—*Affirmed.*

*Bryson & Bryson, E. H. Lundy, James C. Davis,* and *George E. Hise,* for appellants.

*Ward & Williams* and *D. C. Chase,* for appellees.

McCLAIN, J.—The proceedings before the board of supervisors for the establishment of the drainage district in question were under the provisions of chapter 68, Acts 30th General Assembly (see Code Supp. 1907, section 1989a), and it is contended on this appeal that on account of defects in the proceeding, especially for want of a proper petition, bond, and report of the engineer as provided for in section 2 of the act, the board had no jurisdiction to proceed to the establishment of the drainage district, and that its resolution establishing the district was not only adopted without jurisdiction, but was also insufficient in form. The finding of the board of supervisors that the expense of the proposed improvement would not exceed the benefits to result therefrom was also questioned.

I. The sufficiency of the petition is denied on the grounds that it is too uncertain in its description of the starting point of the proposed ditch and of the land to be included within it, and that it refers to lateral branches which will be necessary without describing them, or asking that the board proceed to establish them as well as the principal ditch to be constructed. But the only purpose of the petition is to bring to the attention of the board of supervisors the alleged desirability of the establishment of a drainage district, the location and boundaries of which are described with sufficient definiteness to enable the

1. DRAINAGE: petition: sufficiency of description.

board to determine whether the contemplated improvement is desirable and proper within the statutory description. It need not describe in specific detail each particular tract of land to be included, and, if lands are included within the description which should not be included within the district, that will not render the petition defective. *Zinser v. Board of Supervisors,* 137 Iowa, 660; *Mackay v. Hancock County,* 137 Iowa, 88. The fact that the petition on which the board acted in this case described the starting point of the contemplated improvement as "somewhere near" a certain section specifically described was not we think a substantial failure to comply with the statutory requirement that the petition shall set forth the starting point of the proposed ditch, and the reference to lateral branches seems to be contemplated by the statute itself. It would be in the nature of things impracticable to describe the starting point and course of each lateral branch which might be found necessary after the survey by the engineer subsequently to be appointed. We are satisfied that the petition on which the board acted substantially complied with the requirement of the statute and was sufficient to call into action the powers of the board with reference to the establishment of the contemplated district.

II. In the section of the statute above referred to, the filing of a bond with sureties to be approved by the county auditor conditioned for the payment of all costs and expenses incurred in the proceedings in case the supervisors do not grant the prayer of the petition is also required, and it is contended that no such bond was filed. Two petitions prior to that on which the board finally acted had been presented, asking the establishment of a drainage district, including much of the land described in the final petition, and four days before the last petition was actually marked filed with the county audi-

2. SAME: proceedings for the establishment of a drainage system: sufficiency of bond.

tor a bond was filed with him reciting an application to the board of supervisors by J. E. Dougan and others for the establishment of a drainage district. This bond was signed by J. E. Dougan, as principal, and George Robertson, Jr., and John Robertson, as sureties. It is contended that this bond did not refer to the petition last filed on which the board acted, but to the first petition, and therefore was not such a bond as contemplated by the statute. The first petition was signed by J. E. Dougan and others. The second petition, relating to an extension of the district proposed in the first petition, was signed by George Robertson, Jr., and John Robertson. The third petition included the general area described in the first two petitions, and an additional area of land in another township, and was signed by J. E. Dougan and several of the others who had signed the first petition, and also by the signers of the second petition. It is quite evident to us that this proceeding was from the filing of the first petition until the filing of the petition on which the board finally acted a continuous proceeding, and that the bond was sufficient in form to comply with the statutory requirement in this respect. If the board had not taken action for the establishment of any drainage district such as that contemplated in these petitions, the obligors on the bond would have been liable for all costs and expense incurred in the proceeding. Such bond was in fact on file when the board acted.

It is said that the bond was defective because it was without sureties; George Robertson, Jr., and John Robertson, being, in fact, petitioners. But this objection is without merit. If it had been signed by J. E. Dougan alone of the petitioners with other persons as sureties who properly qualified, it would unquestionably have been sufficient. The fact that the sureties were also petitioners did not make them principals rather than sureties. They purported to sign only as sureties, and there is nothing in

the statute disqualifying them from doing so. We find nothing in the statute declaring all the petitioners liable for the expenses of the proceedings preliminary to the action of the board. The case is not like that of *In re Bradley,* 117 Iowa, 472, which related to costs of litigation subsequent to the action by the board, nor is it like that of *Tiedt v. Carstensen,* 64 Iowa, 131, which related to the costs of a *certiorari* proceeding to test the validity of the action of a board of supervisors in establishing a public road.

But with reference to the sufficiency of the bond, it may also be suggested that its only purpose was to protect the county and perhaps other interested persons against

3. SAME: insufficiency of bond: when immaterial.

the expense necessarily incurred in the preliminary proceedings essential to a determination of the merits of the petition in case the board found against the petitioners as to the establishment of a drainage district as prayed for. The board might have refused to act if a bond had not been filed, but, having acted, the bond has served its purpose, and we think the insufficiency thereof can not be made a ground for questioning the validity of the action taken. *Freeborn County v. Helle,* 105 Minn. 92 (117 N. W. 153); *Gugisberg v. Eckert,* 101 Minn. 116 (111 N. W. 945). These cases were decided under a statute very similar to ours in its provisions, and we think they state the correct rule in this respect.

III. It is further contended for appellants that the board acted without jurisdiction because there was no sufficient report before it of an engineer appointed as con-

4. ESTABLISHMENT OF DRAINAGE DISTRICT: report of engineer: filing same: jurisdiction.

templated by the statute to examine and survey the lands described and locate the contemplated improvement. We have held, as contended for appellants, that the board can not act without such report, nor establish a district different from that recommended by the engineer.

*Zinser v. Board of Supervisors,* 137 Iowa, 660; *Hartshorn v. Wright County District Court,* 142 Iowa, 72. But it is not contended that no engineer was appointed or that no report was made, nor is it contended that the district established was substantially different from that recommended by the engineer. The formal filing with the county auditor of the engineer's report is not specifically required. His return is to be made to the county auditor, and, if the board has before it such return substantially as contemplated by the statute, we think the requirements of the statute have been complied with. In section three of the act there is a referenc to the filing of the return of the engineer with the auditor, but this provision has reference to the action of the county auditor in causing notice to be served upon the landowners, and does not relate to the action of the board. It appears from the record that on February 4, 1907, the board did examine the return of the engineer appointed to examine the land described in the last petition which was filed January 22, 1907, and approved the plan proposed by the engineer, and the auditor was then directed to cause notice to be given to landowners as provided by statute. Three days later said report appears to have been formally filed with the auditor. Evidence that at a subsequent date, and before the action of the board was taken finally establishing the district in accordance with the report, it was taken from the files, was wholly immaterial. It was not necessary that the board should examine the report in connection with the adoption of the final resolution of establishment, and, if it were necessary that it do so, it would clearly be presumed that the report thus withdrawn had been returned to the files or was in the possession of the board. Moreover, it appears, as we find from the evidence, that the report withdrawn by the engineer was not the report relating to the establishment of the ditch, but some report having reference to the construction of

a ditch across the right of way of the Chicago & North-western Railway, a matter which seems to have been sub-sequently submitted to the board of railway commissioners.

As to the sufficiency of the report, it is enough to say that it seems to have furnished to the board of su-pervisors all the information necessary to enable them to act in the establishment of the drainage dis-trict. So far as the accuracy of this report is concerned, we think it is not necessary to go into the evidence presented by the record. The determination of such a question of fact could not in its nature be jurisdictional. We can not say from an exam-ination of the report itself that it was not sufficient, and counsel do not point out any deficiencies which were of such character as to make it impracticable for the board to determine the boundaries of the proposed district. Er-rors of the board in its action in this respect would not defeat its jurisdiction. They could be considered only in determining whether it was justified in establishing the district as proposed.

5. SAME: report of engineer: inaccuracies.

IV. On November 7, 1907, the board adopted a res-olution purporting to establish the drainage district in accordance with the last petition, and on the following day the minutes of the board made by the county auditor purporting to recite such res-olution were by it approved. After appeals had been taken to the district court, the board passed another resolution correcting the minutes of their action on November 7, 1907, with the recital that the attention of the board had been called to clerical errors in the recording of the proceeding on that date, and directing the auditor to record the minutes of said proceeding and resolution in conformity with the facts which were then fully recited. This action of the board was proven in proper manner before the district court determining the appeals, and was made the basis

6. SAME: amendment of supervisors minutes: evidence.

of its decree in which the action of the board establishing the drainage district was confirmed. Counsel for appellants argue that the resolution of November 7, 1907, as recited in the original minutes, purporting to show the action of the board on that date, was not sufficient, and that the subsequent action of the board correcting its records was improperly received in evidence, and acted upon by the district court in determining the appeals. But the question before the district court was whether a proper resolution had been in fact adopted. The right to correct the minutes of the proceedings of the board of supervisors so as to make them correspond to the facts and show what the proceedings actually were was fully discussed by this court in the case of *Tod v. Crisman,* 123 Iowa, 693, and the court there expressed the opinion that such right exists. The contention for appellants' is that this power could not be exercised after these appeals from the action of the board of supervisors were taken. We think, however, that the power of the board to correct its minutes could not be affected by the pendency of any proceeding in court in which those minutes had been offered in evidence, and that, before the determination of the case in which such minutes had been offered, the court might properly receive additional evidence showing the correction of such minutes to correspond with the facts. In *Tod v. Crisman, supra,* the correction of the minutes was not attempted until after the determination of the case in which the original minutes had been received in evidence, and it was held that a party offering the original minutes could not after a decree against him had been rendered amend his own evidence by offering new evidence inconsistent therewith relating to the action of the board on which he had relied. In view of the discussion of the question in *Tod v. Crisman, supra,* we need do no more than say that we adhere to the views therein expressed as to the right of a board of supervisors to cor-

rect at a subsequent meeting the minutes of a proceeding had· at a previous meeting, although the minutes purporting to show the action of the previous meeting had already been formally approved. As the minutes of the action of the board on November 7, 1907, corrected by the board at a subsequent meeting, were in evidence before the district court when the final decree in this case was entered, and as such corrected minutes show the adoption. by the board of supervisors on November 7, 1907, of the necessary resolution in proper form and containing proper recitals, we have no occasion to interfere with the action of the trial court in this respect. Whether or not the recitals of the board correcting its previous action were conclusive as to what such previous action in fact was we need not now determine. The presumption is in favor of the board's action, and we find nothing in the record to satisfy us that it was not in accordance with the facts.

V. A witness was allowed to refresh his recollection with reference to an examination of the lands of these appellants by reference to memoranda made by the commissioners, of which he was one, who examined said lands. He testified that these memoranda were made at the time and were known by him then to be correct, and we think it was therefore not error to allow him to testify as to the condition of said lands by reference to such memoranda.

7. EXAMINATION OF WITNESSES: reference to memoranda.

VI. The finding of the. board . that the construction of the improvement substantially as prayed for in the petition and recommended by the engineer would be conducive to the public health, convenience, and welfare and to the public benefit and utility, and that the cost of construction, expenses, and damages would not be a greater burden than should be borne by the lands benefited by said improvement, was questioned in the lower court, and much testimony .bearing on the subject was introduced. Counsel for appellants in argument have not attempted

to deal specifically with this evidence, and we shall not attempt to do so. But in a general way the objections are that the district, as. established, including an area of about fourteen thousand acres, contains much land that is at present sufficiently drained, or that might be drained without the construction of any public ditch, and that, by the establishment of two smaller drainage districts and the construction of two separate improvements, the drainage of lands which are otherwise not capable of complete drainage might be effected at about one-third of the cost involved in the improvement contemplated.

As to the first of these objections, it must be noticed that the mere elevation of the land above the proposed ditch or present water course through which the surface water discharged will flow is not the sole

8. Drainage: determination of benefits.

test in determining whether the land proposed to be included will be benefited. The whole theory of the establishment of drainage districts is that, by a .general system of improvements, the land included may be more effectually drained than without it, and the opinion of an individual owner of a particular tract that his land can be sufficiently drained without the public improvement is not entitled to controlling consideration. Although one owner might be able to cause the water from his land to be discharged upon his neighbor's land, yet, if his neighbor needs relief from the water so discharged, it may well be that the first owner ought to contribute to the expense of a public improvement which would relieve the entire drainage district proposed from the surface water. If only those whose tile drains could open on their own land into the proposed ditch could be compelled to contribute to the expense thereof, the area of the district must be practically confined to the lands immediately abutting upon the ditch, and the owners of these lands must be compelled to bear the entire expense of taking care of surface water which accumulates from

a much larger region.  This is evidently not the policy of the law.

The district court, trying in equity the appeal from the action of the board in establishing a drainage district (see Code Supplement, section 1989a6), may, no doubt, determine not only whether the proceedings were in the form and on the conditions prescribed by statute, but may also investigate the general question whether the benefit to the district of the proposed improvement is such as to justify the expense; for, in the establishment of such a district, there is not only involved a question of general public policy, but also the question of subjecting private property to assessment for a public improvement which the statute says shall not be done if the expense is excessive, and a greater burden than should properly be borne by the land benefited.  In *Denny v. Des Moines County*, 143 Iowa, 466, we have recently held that in a proceeding to establish a drainage district the determination of the board that the proposed district was not for public benefit or utility or conducive to the public health, convenience, or welfare was not reviewable on appeal, and this is plainly so, for no landowner is entitled to have a public improvement established for his benefit.  As to that matter, there must be an opportunity to exercise a legislative discretion.  Likewise in *Zinser v. Board of Supervisors*, 137 Iowa, 660, this court reversed the action of the lower court in establishing a district which in the opinion of the board of supervisors would involve a greater burden than should be borne by the land benefited.  But this court has never held that the determination of the relation of benefits to expense could not be considered by the court on the appeal of property owners in determining whether the board has properly established a drainage district involving the assessment of the cost upon the property which is assumed to be benefited.  Such a review is expressly authorized by

9. SAME: review on appeal.

the statute, and we think it is properly authorized; for, although the general subject of public benefit is in one sense a matter of discretion, yet, where it is to be determined as affecting burdens to be cast upon private property, it must necessarily assume a judicial character, and must, therefore, be subject to such review on appeal as the Legislature may provide for. But in this case we are satisfied that the general benefit to the district which will result from the construction of the proposed improvement does exceed necessary costs and expenses, and that the district court properly sustained the action of the board in providing for such improvement.

The second objection, that the benefits of drainage to the low swampy land included in the district established could have been secured by the establishment at much less expense of two smaller drainage districts,

10. Establish-ment of drainage districts: area included.

can only be properly considered after a brief reference to the conditions calling for some kind of public relief. The proposed ditch follows in general the course of Beaver Creek, in the channel of which to some extent the ditch is to be constructed by lowering its bottom and securing a more uniform fall. It appears that there are two general areas of swampy land separated by an area through which the stream flows between comparatively high banks, and it is contended for appellants that this middle area does not require, and would not be benefited by, the ditch. It is shown, however, that the swampy area higher up the stream can not be effectually drained without the lowering of the bed of the stream for a portion of its course through the middle area, and the improvement contemplated can be more successfully prosecuted by making one continuous improvement than by the construction of two independent ditches, one above, and the other below, this middle area. Under these circumstances, we think the board was justified in including the entire area in one drainage district in order that

an improvement substantially beneficial to the whole could be constructed. As more fully indicated in the next paragraph of this opinion, the particular landowners whose land was not substantially benefited would be protected against any undue burden in the final assessment of damages which must be in proportion to the actual benefits.

VII. These appeals are not from an order of the board fixing the proportion of the cost and expense involved in the establishment of the district and the construction of the improvement which each of the appellants shall pay, but from the order of the board establishing the district so as to include appellants' lands. We have recently held—in a case decided since this appeal was taken— that the action of the board including the land of an appellant within the boundaries of a district established is an exercise of legislative power which the courts can not review. *Chicago, M. & St. P. R. Co. v. Monona County,* 144 Iowa, 171. And this conclusion is based on the case of *Ross v. Board of Supervisors,* 128 Iowa, 427, in which it was held that the act under which the present proceeding was instituted is not unconstitutional because it fails to provide for notice to property owners whose lands are included in the district. The reasoning in these cases seems to be bottomed on the thought that the boundaries of the district may be established by the board in its discretion for the public benefit, and that, as such establishment does not necessarily subject the owner of land included therein to any substantial assessment, he is in no position to complain. His ground of complaint can only arise when the board proceeds further to determine what proportion, if any, his land shall bear of the total cost and expense of the improvement. On this question the fact that his land had been included in the district is not conclusive, nor does it have any controlling effect. It may well be that the board for convenience shall include in the district some

11. SAME: exercise of legislative power: judicial review.

parcels of land which receive no large benefit, and which, therefore, should not be assessed for any substantial proportion of the costs. Until the board determines the proportion which each of the included tracts is to bear, the landowner has no cause to complain. Therefore, in the case before us, we would not be called upon to reverse the action of the trial court in sustaining the order of the board establishing the district, although we should be satisfied that the lands of some particular appellant would receive no substantial benefit whatever from the contemplated improvement.

It is to be borne in mind that such an improvement involves benefits other than those afforded by the mere facility in the drainage of a particular tract. A tract of land not better drained on account of the public improvement may nevertheless receive some advantage therefrom by reason of the better drainage of highways by which the owner obtains access to the market and from the suppression of noxious swamps which render the neighborhood unhealthful. All these benefits are contemplated in the statute as proper to be taken into account by the board of supervisors in determining whether the establishment of the district and the including of certain lands within it are conducive to the public welfare.

12. Same.

We find no reason for interfering with the decision of the trial court sustaining the action of the board of supervisors in the establishment of this district, and the judgment and decree of the court is therefore *affirmed*.

Evans, C. J.., takes no part.