# IN THE SUPREME COURT OF IOWA

No. 14–1372

Filed May 8, 2015

**MUSCATINE COUNTY ATTORNEY ALAN R. OSTERGREN,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR MUSCATINE COUNTY,**

Defendant.

Certiorari to the Iowa District Court for Muscatine County, Thomas G. Reidel, Judge.

The Muscatine County Attorney sought a writ of certiorari after the district court issued an administrative order establishing a protocol permitting any person protected by a no-contact order issued in a criminal case to petition the district court for modification or termination of the order. **WRIT ANNULLED.**

Alan R. Ostergren, Muscatine County Attorney, plaintiff pro se.

Thomas J. Miller, Attorney General, Jeffrey Thompson, Solicitor General, and Renner Walker, Assistant Attorney General, for defendant.

**HECHT, Justice.**

The district court for Muscatine County issued an administrative order allowing persons protected by no-contact orders to petition the district court to terminate or modify such orders. In this certiorari proceeding, we consider whether the district court exceeded its authority by issuing the administrative order. Because we find the order was within the district court's authority, we annul the writ.

## I. Background Facts and Proceedings.

Iowa Code chapter 664A governs no-contact orders and protective orders. *See* Iowa Code § 664A.2 (2013). Of particular relevance to this case, chapter 664A "applies to no-contact orders issued for violations or alleged violations of [code sections criminalizing domestic abuse assault, harassment, stalking, and sexual abuse], and any other public offense for which there is a victim." *Id.* § 664A.2(1). Section 664A.3(1) sets forth the grounds for entering no-contact orders:

> 1. When a person is . . . arrested for any public offense referred to in section 664A.2, subsection 1, and the person is brought before a magistrate for initial appearance, the magistrate shall enter a no-contact order if the magistrate finds both of the following:
> *a.* Probable cause exists to believe that any public offense referred to in section 664A.2, subsection 1, or a violation of a no-contact order, protective order, or consent agreement has occurred.
> *b.* The presence of or contact with the defendant poses a threat to the safety of the alleged victim, persons residing with the alleged victim, or members of the alleged victim's family.

*Id.* § 664A.3(1)(*a*)–(*b*). Thus, under this statute, a magistrate must issue a no-contact order if he or she makes the requisite findings. *See id.*

On July 22, 2014, the Muscatine County District Court issued an administrative order pertaining "to all requests to terminate or modify Orders of Protection entered in criminal proceedings in Muscatine

County." The order prescribes a formal procedure through which persons protected by such orders may seek to have them modified or terminated.[1] The prescribed procedure requires a protected person seeking relief to deliver to the court a letter setting forth the reasons for their request. Upon receiving the letter, a judge reviews the letter and the underlying criminal case file. The court will not summarily grant a request to modify or terminate a no-contact order unless the State has waived notice and consented to such relief. If the protected person's request is not summarily granted, the court must set a hearing on the matter and give notice to the county attorney. After the hearing, the court determines whether the defendant still poses a threat to a protected person's safety. *See* Iowa Code § 664A.3(1)(*b*).

On August 18, the Muscatine County Attorney (the County Attorney) initiated an original proceeding in this court seeking a writ of certiorari.[2] *See* Iowa R. App. P. 6.107(1)(*a*)–(*b*) (permitting "[a]ny party" claiming the district court exceeded its authority to file a petition for a writ of certiorari "within 30 days after the challenged decision"). In his petition, the County Attorney contended the July 22 administrative order exceeds the district court's authority because it allows victims in criminal cases to circumvent the County Attorney's office and directly seek a modification or termination of no-contact orders in criminal cases.

On August 26, we issued a writ of certiorari.

---

[1]The procedure established by the administrative order expressly does not apply to protective orders entered in civil proceedings pursuant to Iowa Code chapter 236.

[2]In certiorari proceedings, the petition must name "the district court . . . as the defendant." Iowa R. App. P. 6.107(1)(*d*). However, in this case the attorney general represents both the district court and the interests of the State. Therefore, we refer to the defendant in this case as "the State."

## II. Scope of Review.

Certiorari proceedings are "leveled at the tribunal, board, or officer alleged to have exceeded the jurisdiction or authority conferred by law." *Tod v. Crisman*, 123 Iowa 693, 702, 99 N.W. 686, 689 (1904); *see also Linn Cnty. Sheriff v. Iowa Dist. Ct.*, 545 N.W.2d 296, 298 (Iowa 1996). "Under a writ of certiorari, our review is for errors at law." *Crowell v. State Pub. Defender*, 845 N.W.2d 676, 687 (Iowa 2014). When reviewing the district court's action, we "either sustain [the writ] or annul it. No other relief may be granted." *Id.* at 682.

## III. The Parties' Positions.

**A. The County Attorney.** The County Attorney's position is based on separation-of-powers principles. He contends the district court's administrative order intruded upon duties delegated to the executive branch of government—specifically, the county attorney's authority to decide (1) which criminal cases to bring and (2) how to manage and prosecute those cases.

The County Attorney's statutory duties include protecting the community, enforcing criminal laws, and prosecuting criminal offenses. *See generally* Iowa Code § 331.756. The County Attorney asserts domestic abuse crimes are committed against the community as a whole, not just individual victims. Because no-contact orders entered under chapter 664A are part of the criminal law process and protect the community, the County Attorney asserts persons protected under such orders in criminal cases filed in Muscatine County should not be permitted to seek modification or termination of no-contact orders until after they have consulted with his office. A prehearing consultation is essential, the County Attorney contends, because victims of domestic abuse often face enormous pressure from defendants desiring

termination of no-contact orders. The County Attorney maintains that he serves as an important buffer protecting victims who are often ill-equipped to protect themselves against manipulative pressure exerted by defendants. The County Attorney further asserts the district court lacked inherent authority to promulgate an administrative order authorizing victims to seek termination or modification of no-contact orders.

**B. The State.** The State urges several reasons for annulling the writ: (1) the County Attorney lacks standing to petition for a writ of certiorari in this case, (2) the County Attorney did not preserve error, (3) issuance of the order was not a judicial function subject to certiorari review, and (4) the district court acted within its authority when it issued the administrative order.

**IV. Analysis.**

Although "any party" may seek certiorari, Iowa R. App. P. 6.107(1)(*a*), "[t]his court has required standing in certiorari actions," *Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 864 (Iowa 2005). However, we will assume without deciding that the County Attorney has standing and preserved error—and that issuance of the administrative order involved a judicial function—because we conclude the district court had authority to issue the administrative order. *Cf. State v. Hochmuth*, 585 N.W.2d 234, 236 (Iowa 1998) ("Assuming without deciding that Hochmuth has preserved error, we find her challenge . . . is without merit."); *State ex rel. Pillers v. Maniccia*, 343 N.W.2d 834, 835–36 (Iowa 1984) (assuming, without deciding, that the county attorney had standing to bring an equity suit, but affirming the district court's decision to deny equitable relief).

**A.** **Protected Persons' Particularized Interests.** Iowa Code section 664A.3(3) provides no-contact orders are in force "until . . . modified or terminated by subsequent court action" or until the case reaches final resolution. Iowa Code § 664A.3(3). The County Attorney conceded at oral argument that this statute permits the district court to reconsider a no-contact order on its own motion, without a request from the defendant or from a protected person. However, he contends protected persons have no personal interest at stake in an underlying criminal prosecution and therefore can't invoke the court's sua sponte authority to seek relief from protective orders.

The fact that a crime victim is not a party to the underlying criminal proceeding does not preclude him or her from asking the court for relief. In *State v. West*, the district court established a restitution fund paid by a criminal defendant, and ordered the money in the fund to be distributed "pursuant to the direction of the attorney general." 320 N.W.2d 570, 572 (Iowa 1982). Several individuals who were not included in the initial distribution plan "claim[ed] to be victims of West's criminal activity" and asserted they were entitled to share in the distribution. *See id.* at 571–72. They submitted formal claims to share in the restitution fund, but the district court denied the claims. *Id.* at 572. The claimants appealed, and we treated the appeal as an action for writ of certiorari. *Id.* at 573.

The State contended the claimants could not challenge the district court's ruling because they were not parties in the criminal proceeding in which the restitution fund was created and distributed. *Id.* We rejected the State's contention, however, because the claimants alleged they suffered pecuniary damages as a consequence of the defendant's criminal conduct and therefore had a sufficient particularized interest at

stake. *Id.* Although we ultimately denied the relief the claimants sought, *id.* at 574–75, we nonetheless concluded they were allowed to seek it in the certiorari proceeding, *id.* at 573.

We conclude protected persons under no-contact orders in criminal cases have a particularized interest at stake entitling them to request relief from such orders. This interest is evidenced in part by the fact that protected persons may be held in contempt and jailed for aiding and abetting a defendant's violation of a no-contact order. *See Henley v. Iowa Dist. Ct.*, 533 N.W.2d 199, 202 (Iowa 1995); *Hutcheson v. Iowa Dist. Ct.*, 480 N.W.2d 260, 263–64 (Iowa 1992). The procedure implemented by the administrative order accommodates protected persons' important liberty interests by permitting such persons to seek termination or modification of no-contact orders in a criminal case notwithstanding the fact they are not named parties.[3] *Cf. West*, 320 N.W.2d at 573. Accordingly, we reject the County Attorney's assertion that the district court's administrative order purports to establish a remedy for protected persons that the court lacks authority to grant.

**B.    Section 664A.8.** Section 664A.8 provides that if either the State or a victim files an application to extend the no-contact order within ninety days of its expiration,

> the court shall modify and extend the no-contact order for an additional period of five years, unless the court finds that the defendant no longer poses a threat to the safety of the victim, persons residing with the victim, or members of the victim's family.

Iowa Code § 664A.8. The County Attorney contends this section permits protected parties to seek modification of a no-contact order in only one

---

[3]We do not suggest the possibility of being held in contempt is the *only* interest that could motivate protected persons to seek relief from a no-contact order; we merely conclude this interest is sufficient.

way—by petitioning the court to *extend* it within a specific time frame. *See id.* In other words, he asserts the legislature expressly and narrowly limited the circumstances in which the court could modify a no-contact order at a protected party's request. *See Watson v. Iowa Dep't of Transp.*, 829 N.W.2d 566, 570 (Iowa 2013) ("We have observed that legislative intent is expressed by omission as well as inclusion and that the express mention of certain sections implies the exclusion of others."); *see also State v. Wiederien*, 709 N.W.2d 538, 542 (Iowa 2006) (concluding the predecessor to chapter 664A expressly allowed the court to extend a no-contact order upon the defendant's conviction, but contained no provision authorizing the court to extend a no-contact order upon acquittal). We disagree.

We acknowledge the maxim that expression of one thing implies exclusion of others, but we conclude the County Attorney's reading of section 664A.8 is too cramped. Although Section 664A.8 provides that either the State or a victim may apply to extend a no-contact order within ninety days of its expiration, the statute does not preclude either the State or a victim from requesting a court to modify or terminate a no-contact order at other times. Iowa Code § 664A.8. Section 664A.8 must be read in conjunction with section 664A.3(3), which authorizes a district court to modify or terminate a no-contact order sua sponte. We believe the court's authority under section 664A.3(3) to modify or terminate a no-contact order sua sponte implicitly encompasses the power to entertain requests from victims urging the court to exercise such authority. In other words, the clear purpose of section 664A.8 is to grant the court express authority to extend the duration of no-contact orders when the circumstances require continuing protection, not to restrict the

court's authority to modify or terminate such orders when the need for all or part of the protection is no longer extant.

**C.    The Administrative Order.**    The County Attorney further contends that even if district courts generally have authority to terminate no-contact orders sua sponte, *see* Iowa Code § 664A.3(3), the district court here exceeded that authority by establishing a regularized procedure giving one group of persons—victims in pending criminal proceedings—automatic access to the courts.  However, we conclude the administrative order fits comfortably within the district court's authority under section 664A.3(3).  Notably, the administrative order provides that the court will never summarily grant requests to modify or terminate a no-contact order unless the State expressly consents.  In other words, the court will always hold a hearing before granting or denying relief from a no-contact order if the county attorney desires. The county attorney will have an opportunity to offer evidence and advance arguments opposing a protected person's request for relief.  And although we credit the County Attorney's contention that the interests of protected persons might be best served when an objective neutral can shield them at least in part from pressure exerted by defendants, section 664A.3(3) is based on the notion that district court judges can and will capably serve that role.  *Cf. State v. Lyle*, 854 N.W.2d 378, 404 (Iowa 2014) (expressing confidence that district court judges "will do what they have taken an oath to do" and "apply the law fairly and impartially" while leaving room to consider the unique circumstances of each case).

On other occasions, we have concluded district courts have authority "to adopt rules for the management of cases on their dockets." *Johnson v. Miller*, 270 N.W.2d 624, 626 (Iowa 1978); *see also Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 569 (Iowa 1976) (holding the

Polk County District Court "had inherent common-law power" to promulgate a local rule of criminal procedure). In this case, we reach the same conclusion. The administrative order challenged in this case merely manifests the district court's "authority to do what is reasonably necessary for the administration of justice in a case before the court." *State v. Iowa Dist. Ct.*, 750 N.W.2d 531, 534 (Iowa 2008); *see also In re K.N.*, 625 N.W.2d 731, 734 (Iowa 2001) (acknowledging district courts' "authority to ensure the orderly, efficient, and fair administration of justice"). The challenged order does not establish a right to modification or termination of no-contact orders in criminal cases; it simply creates a procedure for seeking such relief. As such, the order is well within the district court's section 664A.3(3) authority.

We make one final observation. Although the district court had authority to issue the administrative order at issue in this case, we again discourage "a proliferation of idiosyncratic local rules." *Critelli*, 244 N.W.2d at 570; *see also Johnson*, 270 N.W.2d at 626. This observation applies with even more force to an administrative order establishing a procedural protocol for a single county within a judicial district.

## V. Conclusion.

The district court in this case had authority to issue the administrative order. Accordingly, we annul the writ.

**WRIT ANNULLED.**

All justices concur except Cady, C.J., who takes no part.